PEOPLE v LaGRANGE

1. Searches and Seizures—Motion to Suppress—Discretion.

A trial judge did not indicate his willingness to hear a motion to suppress, which was not timely made, by hearing the prosecutor's information concerning the search and his position on the legal aspects of the motion where the judge twice pointed out to defense counsel the untimeliness of the motion and emphasized that his listening to the brief argument was not to be construed as a hearing.

2. Searches and Seizures—Motion to Suppress—Determinative Evidence—Appeal and Error.

An appellate court reviewed defendant's contention that evidence was a product of an illegal search and seizure, even though the motion to suppress made in the trial court had not been passed on because of untimeliness, where if the evidence had been ruled inadmissible the defendant would probably have been acquitted.

3. Arrest—Without a Warrant—Probable Cause.

Defendant's arrest without a warrant was without probable cause where the only information the police were acting on was a woman's report that she had seen a man in an alley across the street from her home open a car door, look inside, and then leave, and the woman's description of the man, a description very general in nature, because the police, not knowing whether the man was the owner of the car or whether he had a valid reason to look inside the car, did not have grounds for believing a felony had been committed, much less that the defendant had committed it.

4. Searches and Seizures—Stop and Frisk—Nondangerous Weapon.

Police officers' seizing a paper towel from defendant's jacket was

---

References for Points in Headnotes

[1, 2] 47 Am Jur, Searches and Seizures § 47.

[3] 5 Am Jur 2d, Arrest § 31;
    47 Am Jur, Searches and Seizures § 21 *et seq.*

[4] 47 Am Jur, Searches and Seizures § 21 *et seq.*

not a permissible stop and frisk where the officers testified that they did not frisk the defendant for dangerous weapons, that the defendant did not cause any trouble or attempt to flee, that their conversation with the defendant was friendly and that they did not expect anything they took out of defendant's pocket to be a dangerous weapon and the search, without a probable cause for an arrest, was designed to produce evidence of a larceny.

Appeal from St. Clair, Stanley C. Schlee, J. Submitted Division 2 January 31, 1972, at Detroit. (Docket No. 11894.) Decided April 28, 1972.

Russell LaGrange was convicted of breaking and entering. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Walter W. Turton,* Prosecuting Attorney, *Peter Deegan,* Chief Assistant Prosecuting Attorney, and *Delmer L. Cleland,* Corporation Counsel, for the people.

*Marshall Barrymore,* for defendant on appeal.

Before: LESINSKI, C. J. and J. H. GILLIS and QUINN, JJ.

LESINSKI, C. J. Defendant Russell LaGrange was convicted by a jury of breaking and entering. MCLA 750.110; MSA 28.305. He appeals as of right.

The testimony adduced at trial revealed that the police were called to the home of Mrs. Helen Van Loo late in the evening of October 6, 1970. She reported to the officers responding to the call that she had observed a man with dark hair, dark pants, and a short, light-colored coat open the door of a car parked in the alley across the street from her home, examine the inside of the car, shut the

door, and proceed down the alley. She did not see the man take anything from the car.

A short time later Officer Mansell stopped defendant several blocks from Mrs. Van Loo's residence, after noticing that defendant's description matched that which Mrs. Van Loo had given to the police. After calling for assistance, Officer Mansell asked defendant for identification. As defendant reached in his pocket, his jacket came open and Officer Mansell observed a ten-inch screwdriver stuck through defendant's belt. He relieved defendant of the screwdriver, but did not ask him why he had it in his possession.

At this time a second policeman, Officer Korvach, drove up in his patrol car. Officer Mansell handed him defendant's identification and the screwdriver. Noticing that defendant's jacket pocket was bulging, Officer Mansell then reached inside defendant's pocket and removed a piece of paper towel. Officer Mansell examined the paper towel and threw it in the back of Officer Korvach's patrol car. According to the testimony of Officer Mansell, defendant did not attempt to flee from the officers, nor cause them any trouble. Officer Mansell stated that he did not search defendant for dangerous weapons. Additionally, he said that he did not expect anything that he took from defendant's pocket to be a dangerous weapon, but rather, removed the paper towel from defendant's pocket because he thought it might have been something taken from the automobile.

Officer Mansell then turned defendant over to Officer Korvach and left the scene. Officer Korvach returned the screwdriver to defendant and released him.

Later that night the officers learned that a breaking and entering had taken place at a bread

company. It was determined that entry had been made through a second floor men's lavatory. Officer Korvach recollected the piece of paper toweling that had been seized from defendant earlier in the evening and proceeded to compare that with the end piece of the towel roll in the men's lavatory. He found that the pieces corresponded. Subsequent laboratory tests corroborated this observation. The paper towel was the only evidence produced by the people which established defendant's presence on the scene of the breaking and entering at the bread company.

On appeal defendant argues that the paper towel was the product of an illegal search and seizure in violation of the United States and Michigan Constitutions, US Const, Am IV; Const 1963, art 1, § 11, and, accordingly, it was reversible error for the trial court to allow the paper towel to be admitted into evidence.

At the outset we note that it is well-settled law in this state that a motion to suppress evidence on the basis of an illegal search and seizure must generally be made prior to trial. *People v Ferguson,* 376 Mich 90 (1965).*

In the instant case, defense counsel did not move to suppress the paper towel until 9:30 on the morning of the trial, shortly before the selection of the jury. At 10:30 a.m. when the *voir dire* had

---

* GCR 1963, 108.4, provides that "a written motion, other than one which may be heard *ex parte,* and notice of the hearing thereof shall be served not later than 4 days before the time specified for the hearing, unless a different period is fixed by these rules or for good cause shown, and in such latter event, authorization by the court shall be indorsed in writing on the face of the notice or by separate order". The predecessor of this rule was applied to the motion to suppress in *People v Londe,* 230 Mich 484 (1925), where the Michigan Supreme Court held that a motion to suppress made after the case had been called and just prior to the impaneling of the jury, was not timely. See 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 874, p 1144.

been completed and the jury had been sworn, the trial judge addressed himself to the motion, pointing out that he did not have "any facts to even rule on". When the defense attorney attempted to apprise the court of the circumstances surrounding the search, she was reminded by the trial judge that "this is no evidentiary showing". Subsequently, the prosecutor briefly informed the court of the facts concerning the search and his position on the legal aspects of the motion.

The court then ruled as follows:

*"The Court:* First of all, Mrs. Wright, I shouldn't even hear your motion, it is too late. Motion to suppress is not to come at 9:30 on the morning of trial when we start drawing a jury. I have listened to your motion and I am going to deny your motion to suppress."

Defendant contends that the trial court, by hearing oral argument on the motion, exercised its discretion in favor of hearing the motion to suppress, despite its lack of timeliness. Therefore, defendant argues, the court should have granted a separate evidentiary hearing on the motion. However, we do not regard the trial court's actions on these facts as indicating a willingness to hear the motion. The trial judge twice pointed out to the defense attorney that the motion had been made at 9:30 a.m. on the day of trial, and emphasized that the brief arguments which he allowed were not to be construed as an evidentiary hearing. The trial court ruled that a motion made at the beginning of the jury selection process is not timely, and, consequently, denied the motion.

However, this Court, in certain cases, can take cognizance of a search and seizure claim that was not timely raised at trial. As was stated in *People v Degraffenreid,* 19 Mich App 702, 715–716 (1969):

"Even though the right asserted is not one so fully protected that only the defendant can waive it, and even though defense counsel's failure to assert such right does not constitute deprivation of the constitutional right to counsel, if the mistake is of sufficient importance, the courts, trial and appellate, may, and in some cases are obliged to, grant the defendant relief.

\* \* \*

"Where the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted, the court may, despite failure to have preserved the error by timely objection, grant a new trial."

In *People v Gunn,* 34 Mich App 106, 109 (1971), the *Degraffenreid* language was interpreted to dictate the following:

"It is clear, therefore, that we must examine the evidence complained of to see whether or not (1) it was erroneously admitted, and (2) its exclusion would probably have meant acquittal for the defendants."

Applying these concepts to the facts of this case, we find that the exclusion of the paper towel as evidence would probably have meant acquittal for defendant, since it was the only evidence that linked him to the breaking and entering at the bakery company. Therefore, we turn to a consideration of whether the paper towel was properly admitted into evidence.

Relevant to the inquiry of whether the evidence was properly admitted is the possibility that the search was incident to a valid arrest. As previously emphasized, the police officers at trial did not purport that they had arrested defendant when they first questioned him. In order for a police officer to affect a valid warrantless arrest, pursuant to the terms of MCLA 764.15; MSA

28.874, he must have reasonable cause to believe that a felony has been committed and that the accused person committed it. There was no ground in this case to believe that a felony had, in fact, been committed, much less that defendant had committed it. The information upon which the police were acting was that a woman had seen a man in the alley across the street from her home open a car door, look inside, and then leave. It was not known whether the man was the owner of the car, or had a valid reason for looking inside it. In addition, the description of the man was general in nature. This search was not incident to a valid arrest.

To the contrary, the instant situation was more closely analogous to the "stop-and-frisk" examined by the United States Supreme Court in *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and *Sibron v New York,* 392 US 40; 88 S Ct 1889; 20 L Ed 2d 917 (1968). The Supreme Court recognized in *Terry* that a valid consideration in the stop-and-frisk situation is:

> "[T]hat of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior, even though there is no probable cause to make an arrest." *Terry, supra,* at 392 US 22; 88 S Ct 1880; 20 L Ed 2d 906–907.

When the police are engaged in investigatory activities of this manner, the Court continued:

> "[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to

arrest the individual for a crime." *Terry, supra,* at 392 US 27; 88 S Ct 1883; 20 L Ed 2d 909.

Officer Mansell did not "frisk" defendant for dangerous weapons in this case, however. He stated that defendant did not attempt to flee and did not cause "a bit" of trouble. Officer Korvach testified that the conversation between the officers and defendant was "friendly" and that "there was no hostility". It does not appear that these officers held the belief that their "safety or that of others was in danger".

Further, the search in this case was not limited in scope to "an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer". *Terry, supra,* at 392 US 29; 88 S Ct 1884; 20 L Ed 2d 911. See, also, *People v Dogans,* 26 Mich App 411, 422 (1970). Officer Mansell stated specifically at trial that he did not expect anything he took out of defendant's pocket to be a dangerous weapon. We find particularly applicable the following statement from *Sibron, supra,* at 392 US 65; 88 S Ct 1904, 20 L Ed 2d 936:

"[W]ith no attempt at an initial limited exploration for arms, Patrolman Martin thrust his hand into Sibron's pocket and took from him envelopes of heroin. His testimony shows that he was looking for narcotics and he found them. The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception— the protection of the officer by disarming a potentially dangerous man."

Likewise, in this case Officer Mansell was looking not for a weapon but an item that may have been taken from an automobile.

The search and seizure in this case cannot be

justified on the authority of *Terry, supra.* It was illegal, violating the United States and Michigan Constitutions, and the paper towel should not have been admitted into evidence. This fulfills the second requirement of *Gunn, supra.*

Moreover, we have searched this record carefully, and discovered the paper towel to be not only the major evidence placing defendant at the scene of the breaking and entering, but the sole evidence connecting him to the crime. Without the existence of the paper towel, there is not only insufficient evidence to support his conviction beyond a reasonable doubt; there is no evidence at all to support his conviction.

Reversed and remanded.

All concurred.