PEOPLE v BLASSINGAME

1. CRIMINAL LAW—ATTORNEY AND CLIENT—COURT-APPOINTED COUN-
   SEL—SUBSTITUTION OF COUNSEL—DISCRETION.

   An indigent defendant, entitled to the appointment of counsel at
   public expense, is not entitled to choose his counsel nor is he
   entitled to different counsel whenever and for whatever reason
   dissatisfaction arises with counsel provided for him; failure to
   allow a substitution of court-appointed counsel for an indigent
   defendant was not an abuse of discretion where the defendant
   offered no substantial reasons for the substitution and the court
   gave the defendant the option of proceeding *in propria persona.*

2. SEARCHES AND SEIZURES—APPEAL AND ERROR—FAILURE TO RAISE
   ISSUE—MISTAKE OF COUNSEL—EXCLUSION OF EVIDENCE—PREJU-
   DICE.

   The legality of a search and seizure may be considered for the
   first time on appeal where the failure to raise the issue previ-
   ously was due to a mistake of counsel and the evidence ob-
   tained by the search and seizure contributed to the defendant's
   conviction; the evidence obtained by the search and seizure
   must be examined to see if it was erroneously admitted and if
   its exclusion would probably have meant acquittal.

3. CRIMINAL LAW—EVIDENCE—SUPPRESSION OF EVIDENCE—APPEAL
   AND ERROR—MOTIONS—TIMELINESS.

   Failure to make a timely motion to suppress evidence precludes
   consideration of the alleged error on appeal where the evidence

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Attorneys at Law § 207.

[2] 29 Am Jur 2d, Evidence §§ 425, 426.

Modern status of rule governing admissibility of evidence obtained
by unlawful search and seizure. 50 ALR2d 531.

[3] 21 Am Jur 2d, Criminal Law § 225.

[4] 75 Am Jur 2d, Trial § 317.

[5] 21 Am Jur 2d, Criminal Law § 368; 29 Am Jur 2d, Evidence § 371
*et seq.*

Admissibility of evidence of lineup identification as affected by
allegedly suggestive lineup procedures. 39 ALR3d 487.

[6] 75 Am Jur 2d, Trial § 725.

complained of was merely cumulative, exclusion of the evidence would not have meant acquittal, and the other evidence of guilt was overwhelming.

4. CRIMINAL LAW—PROSECUTOR'S REMARKS—PREJUDICE—OBJECTIONS —INSTRUCTIONS TO JURY—CURATIVE INSTRUCTIONS—FAIR TRIAL —MISCARRIAGE OF JUSTICE.

A conviction will not be reversed because of the prejudicial remarks of a prosecutor during closing argument where no objection was made at trial, the prejudice could have been avoided by a curative instruction, the jury was emphatically instructed that the comments of counsel are not evidence, the remarks were not so prejudicial as to deny a fair trial, and no miscarriage of justice occurred.

5. CRIMINAL LAW—IDENTIFICATION—LINEUP—SUGGESTIVENESS—BURDEN OF PROOF—PRESENCE OF COUNSEL.

A defendant, who claims that a pretrial lineup identification at which his counsel was present was unnecessarily suggestive, has the burden to factually support his claim.

6. APPEAL AND ERROR—IDENTIFICATION PROCEDURE—TRIAL COURT—CLEAR ERROR.

A trial court's determination of the merits of a claim of improper identification procedures will be reversed only when that determination is clearly erroneous.

Appeal from Wayne, James N. Canham, J. Submitted Division 1 February 10, 1975, at Detroit. (Docket No. 18523.) Decided March 10, 1975.

Charles S. Blassingame was convicted of assault with intent to commit rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Joseph B. Szeremet* and *Barbara L. Betsey,* Assistants State Appellate Defender, for defendant.

Before: D. E. HOLBROOK, P. J., and DANHOF and N. J. KAUFMAN, JJ.

DANHOF, J. Defendant was convicted by a jury of assault with intent to commit rape, MCLA 750.85; MSA 28.280. He was sentenced to a term of from six years, six months to ten years in prison, and he appeals raising five issues. We affirm.

A prior jury conviction of the crime of rape was reversed by this Court due to instructional error on March 23, 1973. Defendant was retried on the original charge, and convicted of the lesser offense.

On February 24, 1970, the complaining witness, a nine-year-old girl, was delivering newspapers with the help of a girl friend of approximately the same age. After delivering a paper to the house of one of her customers, a man later positively identified as the defendant came to the door and asked to speak to the girl about the paper. The man asked her into the house, then locked the door, and pulled her into a back bedroom. He put a knife to the girl's throat, threatened to cut her if she resisted or screamed, forced her to remove her pants and had sexual intercourse with her.

When the complainant was allowed to leave, she ran home screaming. She would not tell her mother what happened, so the police were called. A female police officer was able to persuade her to relate the details of what had transpired. Officers were dispatched to the house in question, but they found no one there. A physical examination by a physician disclosed evidence of sexual abuse, but no evidence of sperm. The jury returned a verdict of guilty of assault with intent to commit rape.

I

About one week before the start of the second trial, defendant requested a substitution of counsel. He claimed that his attorney, a member of the staff of the Public Defender's Office, had been adversely influenced by an incident which occurred during his first trial. At the conclusion of the sentencing proceedings following the original conviction, the defendant's reaction was recorded by the court reporter as the last entry in the sentencing transcript: "(Thereupon the defendant grabbed his counsel, Mrs. Borman about the neck; she screamed; a scuffle ensued and the defendant had to be subdued by the court officers throwing him to the floor.)"

Because Mrs. Borman, now Judge Borman of the Recorder's Court Bench, was associated with the Public Defender's Office, as was defendant's appointed counsel, the defendant felt that "this may interfere with his work unknowingly on his own part". The trial court carefully examined the defendant's allegations, but the defendant was unable to indicate any concrete facts to substantiate his complaint other than vague "personal feelings". The trial court discussed the problem with the defendant, explained that his attorney was "one of the better ones", an "excellent lawyer" who had been "most diligent" and who was doing "an excellent job". Nevertheless, the trial court gave the defendant the option of proceeding *in propria persona.* After a short recess granted to allow the defendant to consider the alternatives, the defendant indicated that he had consulted with his attorney and that he would "keep him and let him represent me".

On appeal, defendant contends that the trial court abused its discretion by disallowing a substi-

tution of counsel, and that as a result, his conviction must be reversed. This contention must be evaluated in light of the Supreme Court's recent statement in *People v Ginther,* 390 Mich 436, 441; 212 NW2d 922 (1973):

"An indigent defendant, entitled to the appointment of a lawyer at public expense, is not entitled to choose his lawyer. He may, however, become entitled to have his assigned lawyer replaced upon a showing of adequate cause for a change in lawyers."

The reason for a change urged upon the trial court and relied upon on appeal is defendant's feeling that his attorney's "performance was being affected by his feelings". Despite the insubstantiality of this objection, the trial court diligently explored the defendant's trepidations and gave him the option of representing himself. Under these circumstances, the discussion and resolution of the identical question in *People v Bradley,* 54 Mich App 89, 95; 220 NW2d 305 (1974), is controlling:

"An indigent defendant is entitled to counsel. He is not entitled to counsel of his choice nor is he entitled to different counsel whenever and for whatever reason dissatisfaction arises with counsel provided for him. *People v Henley,* 26 Mich App 15, 26; 182 NW2d 19 (1970); *People v Grenier,* 34 Mich App 93; 190 NW2d 742 (1971); *People v Williams,* 2 Cal 3d 894; 88 Cal Rptr 208; 471 P2d 1008 (1970); *People v Bentley,* 47 Mich App 150; 209 NW2d 333 (1973). A defendant is only entitled to a substitution of appointed counsel when discharge of the first attorney is for 'good cause' and does not disrupt the judicial process. *People v Wilson,* 43 Mich App 459; 204 NW2d 269 (1972); *People v Holcomb,* 47 Mich App 573; 209 NW2d 701 (1973).

"In this case defendant could have elected to proceed *in propria persona.* Since he made no such election and

advanced no persuasive arguments to support his motion for change of counsel, the trial court did not err in requiring him to proceed with his appointed counsel."

## II

The next issue raised by the defendant involves his untimely objection to the admission of evidence discovered during a warrantless search of the house in which the crime occurred. In response to a call from the victim's mother, two police officers went to the home and observed that the front door was opened and a television set was on. They checked with a neighbor to be sure they had the right house, called the police station on the patrol car radio to report their activities, and then entered the house. The officers discovered a single brown sock in a hallway which was identified at trial as having been worn that day by the victim. They also discovered a newspaper and a blood-stained diaper. These items were admitted into evidence without objection from the defense; the record discloses that no motion to suppress was made at any time at either trial, although there is no question but that the relevant facts were well-known to the defendant and both of his attorneys.

Few rules are better established in this state than that formulated in the leading case of *People v Ferguson*, 376 Mich 90; 135 NW2d 357 (1965), an objection in the form of a motion to suppress must be made in order to advance as error the contention that illegally obtained evidence was admitted at trial. *People v Davis*, 52 Mich App 59; 216 NW2d 440 (1974), *lv den*, 391 Mich 826 (1974), *People v Pacely*, 51 Mich App 67; 214 NW2d 561 (1974), *lv den*, 392 Mich 786 (1974), *People v Wilder*, 51 Mich App 280; 214 NW2d 749 (1974),

*People v Plozai,* 50 Mich App 131; 212 NW2d 721 (1973).

Nevertheless, a limited exception has been recognized. If the failure to raise the issue of the legality of the search and seizure is due to a mistake on the part of the defendant's lawyer, the issue may be considered on appeal. *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969). But the issue will be considered only if the impugned evidence contributed to the conviction. *People v Dogans,* 26 Mich App 411; 182 NW2d 585 (1970). Thus, in order to invoke the exception, the complained of evidence must be examined "to see whether or not (1) it was erroneously admitted, and (2) its exclusion would probably have meant acquittal for the defendants". *People v Gunn,* 34 Mich App 106, 109; 190 NW2d 793 (1971), *People v LaGrange,* 40 Mich App 342, 347; 198 NW2d 736 (1972). Also see *People v Bukoski,* 41 Mich App 498, 501; 200 NW2d 373 (1972).

Consideration of the first element in relation to the facts of this case illustrates one of the primary reasons for the rule developed in *Ferguson.* Because no timely objection was made, the facts surrounding the search of the house were never authoritatively determined. The record does indicate that the house did not belong to the defendant, but rather was owned by a relative who permitted him to stay there temporarily. The nature of his occupancy is unclear; consequently it may be, as strenuously argued by the prosecution, that the defendant lacked standing to raise the warrantless search issue. See for example, *People v Scott,* 44 Mich App 462; 205 NW2d 291 (1973), *People v Goeppner,* 20 Mich App 425; 174 NW2d 143 (1969). There is also some indication that the defendant may have abandoned the residence, and

lacked standing for that reason. See *People v Mason,* 22 Mich App 595; 178 NW2d 181 (1970), *lv den,* 383 Mich 826 (1970). In the absence of a motion to suppress, these issues were never directly considered in the trial court, and the record is insufficient to permit this Court to resolve them.

Application of the second element to the facts of this case is possible, however. If the complained of evidence was excluded, the defendant would nevertheless have been convicted. The defendant concedes in his brief on appeal that the diaper "was totally irrelevant to the facts at issue" and that "it proved nothing". At trial, the prosecutor admitted that the diaper was "not a very important piece of proof".

Neither the newspaper nor the victim's stocking was determinative of the outcome of this trial. Both were merely cumulative evidence of facts already established by the direct testimony of witnesses. The presence of the complainant in the house at that time, which this evidence tended to prove, was established by the eyewitness account given by the girl friend who was helping the complainant to deliver the newspapers, and by the complainant herself. In view of the totality of the overwhelming evidence of the defendant's guilt, it is clear beyond a reasonable doubt that the exclusion of this evidence would not have meant acquittal for the defendant. Therefore, this case does not come within the exception to the general rule, and the failure to preserve this issue by a timely motion to suppress precludes further consideration of the legality of the means used to obtain the evidence.

### III

The next issue raised by the defendant in this

appeal concerns remarks of the prosecutor in his closing argument which defendant now contends were improperly prejudicial. No objection to these comments was made at trial; therefore, another well-settled rule is applicable to this allegation of error. "The rule is that this Court will reverse a conviction based upon a prejudicial remark made during closing argument, only when the prejudice could not have been rectified by a curative instruction on the part of the trial judge, where the prejudicial remark was not objected to at the trial below." *People v Latham,* 32 Mich App 198, 200; 188 NW2d 240 (1971), quoted in *People v Corsa,* 50 Mich App 479, 485; 213 NW2d 579 (1973), *lv den,* 391 Mich 809 (1974), *People v Bennett,* 46 Mich App 598, 623; 208 NW2d 624 (1973), *rev'd on other grounds,* 393 Mich 445; 224 NW2d 840 (1975). See also *People v Coffman,* 45 Mich App 480; 206 NW2d 795 (1973), *lv den,* 390 Mich 758 (1973).

During his closing argument, the prosecutor told the jury "So you have to read between the lines I think in determining what in fact did happen", and that sufficient evidence "spoken or unspoken" had been presented to establish the crime. The interpretation of defendant's appellate counsel notwithstanding, the prosecutor was not exhorting the jury to convict the defendant even in the absence of sufficient evidence. The remarks of the prosecutor must be read within the context in which they were made. *People v Cowell,* 44 Mich App 623; 205 NW2d 600 (1973). When read as part of the entire closing argument, it is readily apparent that the prosecutor was telling the jury that due to the age of the victim and the nature of the offense, all of the minute details surrounding the crime had not been made part of the case. Nevertheless, the evidence both testimonial and physical

which had been presented was more than adequate to prove guilt beyond a reasonable doubt. Any uncertainty could have been rectified if timely objection had been made. See *People v Garcia,* 31 Mich App 447; 187 NW2d 711 (1971).

At the conclusion of his closing statement, the prosecutor discussed the difficult task facing the members of the jury. On the one hand, the liberty of the defendant was at stake. "On the other hand, you have the fear, I suppose, that all citizens have, namely that if he committed that crime, if he is that kind of person, whose little girl is he going to rape next?" The last clause in this sentence had best been left unsaid. However, even though the statement of the prosecutor was improper, its prejudicial effect could have been cured by a cautionary instruction; no miscarriage of justice occurred. *People v David Smith,* 16 Mich App 198; 167 NW2d 832 (1969). The jury was emphatically instructed that the comments and argument of counsel are not evidence, and that it is the duty of the jury to determine the facts. *People v Ballenberger,* 51 Mich App 353; 214 NW2d 742 (1974), *lv den,* 392 Mich 753 (1974), *People v Page,* 27 Mich App 682; 183 NW2d 838 (1970). Read as a whole, and in conjunction with the trial court's instruction, the closing argument of the prosecutor was not so prejudicial as to deny defendant a fair trial. *People v Spaulding,* 42 Mich App 492; 202 NW2d 450 (1972), *lv den,* 388 Mich 809 (1972).

## IV

By way of supplemental briefs, two additional issues are raised by the defendant. The first of these was properly preserved for review by a timely objection in the lower court in the form of a motion to suppress the results of the lineup identi-

fication. Although the relevant hearing transcript is no longer available, the motion to suppress the identification testimony was apparently denied. Defendant makes no suggestion to the contrary, nor does he object on this appeal to the deficiency in the lower court record. The record does affirmatively disclose that defense counsel was present at the lineup. Therefore, the burden is on the defendant to factually support the claim that the identification procedures were unnecessarily suggestive. *People v Curtis,* 34 Mich App 616; 192 NW2d 10 (1971).

At the original preliminary examination held in January, 1971, the complainant testified that she identified the defendant at a lineup which took place about seven months after the attack. However, her identification of the defendant at that time was slightly equivocal in that she was not absolutely sure that it was the defendant who had attacked her. After the lineup, the complainant asked the police woman in charge of the case if she had selected the "right man". The police woman, who was talking to another person at the time, did not respond immediately; but the child persisted and the officer replied offhandedly, "Yes". Because of this occurrence, and because the complainant did not notice that the defendant had a glass eye until the lineup, defendant argues that her identification testimony should have been suppressed.

The reason for any uncertainty in the complainant's identification of the defendant at the lineup, and in her subsequent account of the lineup at the preliminary examination, is evident from the record. The defendant had grown a beard and a mustache, and under adroit examination, the child had become somewhat confused. Nevertheless, at

the first trial in March, 1971 and again at the second trial in June, 1973 the victim positively identified the defendant as her assailant. Despite grueling cross-examination on both occasions, she remained absolutely certain of the identity of her attacker.

This Court will reverse the trial court's determination of the merits of a claim of improper identification procedures only when that determination is clearly erroneous. *People v Daniels,* 39 Mich App 94; 197 NW2d 285 (1972). Under the facts of this case, the defendant has failed to support his claim that the totality of the circumstances resulted in a substantial likelihood of misidentification in violation of his right to due process. "We find no evidence in the record to disturb the trial court's ruling that the lineup was proper and that the identification at trial should not have been suppressed." *People v Szymanski,* 52 Mich App 605, 609; 218 NW2d 95 (1974).

## V

The final issue raised by the defendant has been resolved contrary to his position in *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974).

Affirmed.