PEOPLE v LOSEY

Docket No. 78-3340. Submitted February 6, 1980, at Lansing.—Decided June 16, 1980. Leave to appeal applied for.

Orville Losey, Jr. was convicted of conspiracy to commit murder and sentenced to 40 to 60 years imprisonment, Eaton Circuit Court, Richard Robinson, J. The information filed by the prosecuting attorney alleged a conspiracy to murder defendant's ex-wife among the defendant, James Lafler and Ronald Heath. Heath was granted immunity from prosecution in return for his testimony. Lafler was tried separately after the defendant's trial and was acquitted. Defendant appeals alleging numerous errors. *Held:*

1. A criminal defendant charged with conspiracy may be convicted of conspiracy despite the acquittal of other codefendants charged with the same conspiracy, where one codefendant was granted immunity from prosecution because no determination as to the guilt of the codefendant who had been granted immunity has been made.

2. The corpus delicti of first-degree premeditated murder must be established by evidence *aliunde* a defendant's confes-

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Conspiracy § 24 *et seq.*

Prosecution or conviction of one party to alleged conspiracy as affected by disposition of case against other parties. 91 ALR2d 700.

[2] 29 Am Jur 2d, Evidence §§ 149, 530.

40 Am Jur 2d, Homicide §§ 284, 285, 432 *et seq.*

Corroboration of extrajudicial confession or admission. 45 ALR2d 1316.

[3] 16 Am Jur 2d, Conspiracy §§ 45-48.

[4] 16 Am Jur 2d, Conspiracy § 5.

[5] 40 Am Jur 2d, Homicide § 28 *et seq.*

[6] 16 Am Jur 2d, Conspiracy § 12.

[7] 29 Am Jur 2d, Evidence §§ 363, 364.

[8] 29 Am Jur 2d, Evidence §§ 783, 785, 787, 790, 798.

Admissibility in evidence of colored photographs. 53 ALR2d 1102.

[9] 5 Am Jur 2d, Appeal and Error § 624 *et seq.*

63 Am Jur 2d, Prosecuting Attorney § 27.

sion, however this rule does not extend to a defendant's admissions.

3. A prima facie case of conspiracy must be established by independent evidence as a condition precedent to the admissibility of a coconspirator's statements.

4. Murder is not an element of conspiracy to commit murder because conspiracy to commit a crime is a distinct offense apart from the crime which is the object of the conspiracy.

5. A criminal conspiracy does not end merely because the substantive crime which is its primary object has been completed; settling of the financial aspects of the transaction among the conspirators and other acts necessary to complete the operation on which they were jointly engaged are equally part of the conspiracy.

6. Evidence brought out by the prosecuting attorney by cross-examination which was relative to motive and provided the vital connective link to a material issue being tried is admissible evidence.

7. An on-the-scene color photograph of a murder victim may be admitted into evidence if relevant and material so long as it is not so gruesome as to compel the conclusion that it was offered solely to arouse the passion or prejudice of the jury or to render its prejudicial effect greater than its probative value.

8. Reversible error does not result where a prosecuting attorney did not reveal the existence of a prior inconsistent statement of a key prosecution witness until after the jury had retired to deliberate but where the defendant made no request for exculpatory material and where there is no reasonable doubt about the guilt of the defendant.

Affirmed.

1. CONSPIRACY — CRIMINAL LAW — COCONSPIRATORS — IMMUNITY FROM PROSECUTION.

    A criminal defendant charged with conspiracy may be convicted of conspiracy despite the acquittal of other codefendants charged with the same conspiracy where one codefendant was granted immunity from prosecution because no determination as to the guilt of the codefendant who has been granted immunity has been made.

2. HOMICIDE — FIRST-DEGREE MURDER — CORPUS DELICTI — CONFESSION.

    The corpus delicti of first-degree premeditated murder must be established by evidence *aliunde* a defendant's confession, however this rule does not extend to a defendant's admissions.

3. CONSPIRACY — CRIMINAL LAW — COCONSPIRATORS — STATEMENTS.
   A prima facie case of conspiracy must be established by independent evidence as a condition precedent to the admissibility of a coconspirator's statement (MRE 801[d][2][E]).

4. HOMICIDE — MURDER — CONSPIRACY — ELEMENTS.
   Murder is not an element of conspiracy to commit murder because conspiracy to commit a crime is a distinct offense apart from the crime which is the object of the conspiracy.

5. HOMICIDE — MURDER — AIDING AND ABETTING — ELEMENTS.
   Murder is an element of the crime of aiding and abetting murder.

6. CONSPIRACY — CRIMINAL LAW — ELEMENTS.
   A criminal conspiracy does not end merely because the substantive crime which is its primary object has been completed; settling of the financial aspects of the transaction among the conspirators and other acts necessary to complete the operation on which they were jointly engaged are equally part of the conspiracy.

7. EVIDENCE — CROSS-EXAMINATION — PROSECUTING ATTORNEY.
   Evidence brought out by a prosecuting attorney by cross-examination which is relative to motive and provides the vital connective link to a material issue being tried is admissible evidence.

8. CRIMINAL LAW — EVIDENCE — HOMICIDE — PHOTOGRAPHS.
   An on-the-scene color photograph of a murder victim may be admitted into evidence if relevant and material so long as it is not so gruesome as to compel the conclusion that it was offered solely to arouse the passion or prejudice of the jury or to render its prejudicial effect greater than its probative value.

9. APPEAL — EVIDENCE — PROSECUTING ATTORNEYS — INCONSISTENT STATEMENTS — REVERSIBLE ERROR.
   Reversible error does not result where a prosecuting attorney did not reveal the existence of a prior inconsistent statement of a key prosecution witness until after the jury had retired to deliberate but where the defendant made no request for exculpatory material and where there is no reasonable doubt about the guilt of the defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Paul F. Berger,*

Prosecuting Attorney, and *Janis L. Blough,* Assistant Prosecuting Attorney, for the people.

*James Krogsrud* and *Terrence R. Flanagan,* Assistant State Appellate Defenders, for defendant on appeal.

Before: CYNAR, P.J., and V. J. BRENNAN and M. F. CAVANAGH, JJ.

CYNAR, P.J. Defendant was convicted of conspiracy to commit murder, MCL 750.316; MSA 28.548 and MCL 750.157a; MSA 28.354(1), and was sentenced to 40 to 60 years imprisonment. Defendant was acquitted of a charge of aiding and abetting murder. He appeals as of right.

I

The information filed in this case alleged a conspiracy among defendant, James Willis Lafler, and Ronald Heath to murder Maria A. Losey, defendant's ex-wife. Lafler was tried separately after defendant's trial and was acquitted of that charge and Heath was granted immunity in return for his testimony.

On February 11, 1977, the victim was found dead in her home in Delta Township by the defendant, who reported the crime to the police. Death was the result of two .22-caliber bullet wounds in the head. The bullets were found in the victim's skull. Based on information received during the course of their investigation, a state police diver recovered a .22-caliber bolt action rifle, which was alleged to be the murder weapon, from the Kalamazoo River.

A neighbor of the victim testified that on the date of the homicide she saw a car drive past the

decedent's house, which vehicle stopped twice. The neighbor was uncertain of the make and model year of the car but noted that it had a brown bottom and a white top. A car fitting this general description was found to have been owned by a Ron VerMuelen at the time of the killing and was borrowed by Lafler the day prior to the murder.

Ronald Heath was the key prosecution witness. At trial, he testified that defendant asked him if Lafler could "get rid of" his ex-wife. A few days later, Health brought Lafler to defendant's house at his request. Defendant and Lafler held a discussion in Heath's absence. Immediately thereafter, Heath noticed that Lafler had acquired a substantial amount of money. Leaving defendant's home, Lafler had Heath drive him past the victim's residence, at which time Lafler discussed killing her. On a subsequent occasion, Heath witnessed a transfer of $300 to Lafler from defendant. He substantiated the fact that Lafler borrowed Ver-Muelen's car. On the day of the homicide, Lafler called Heath asking for defendant's telephone number.

Heath further testified that on February 12, he accompanied Lafler, VerMuelen, and two other men, Leroy Baker and Ted Renner, on a trip to pick up VerMuelen's car. The auto was stranded on I-94 just east of I-69. Upon arriving at their destination, Lafler retrieved a .22-caliber rifle secreted away near the car. Lafler tossed the rifle into a nearby river. This account was corroborated by Baker, Renner, and VerMuelen.

Heath also testified regarding payments made by defendant to Lafler after the killing in which he served as the middleman.

Defendant testified in his own defense. He stated that Heath informed him that Lafler had killed his

ex-wife. He explained that one payment made to Heath was in return for a loan.

## II

Defendant first argues for reversal of his conviction on the ground that there can be no one-man conspiracy and that since Lafler was acquitted of the charge at a later trial, and Heath was granted immunity, he, as the sole remaining alleged coconspirator, cannot be convicted on the conspiracy charge.

This argument was raised and rejected in *People v Berry,* 84 Mich App 604, 607-608; 269 NW2d 694 (1978), where this Court declared:

"On appeal, defendant contends that he cannot be convicted of a conspiracy charge where his sole alleged coconspirator received immunity from prosecution. Defendant reaches this conclusion by analogy from cases which have held that where all but one coconspirator is acquitted, the remaining coconspirator cannot be convicted on a conspiracy charge. *People v Alexander,* 35 Mich App 281; 192 NW2d 371 (1971). See generally, Anno: *Prosecution or Conviction of One Party to Alleged Conspiracy as Affected by Disposition of Case Against Other Parties,* 91 ALR2d 700. This result is based on the fact that a conspiracy is a partnership in criminal purposes that requires more than one conspirator. There is no such thing as a one-man conspiracy, and once all alleged coconspirators are acquitted, what would remain would be a one-man conspiracy, *People v Alexander, supra,* at 282; *People v Atley,* 392 Mich 298, 310; 220 NW2d 465 (1974).

"Defendant's analogy is not valid, however. When alleged coconspirators are acquitted, a finding of not guilty of the charged conspiracy has been made. When alleged coconspirators are granted immunity (or when they are unavailable for prosecution for some reason), no determination as to their guilt has been made. A grant of immunity is not inconsistent with guilt. The

instant defendant may still be convicted despite his sole codefendant's immunity from conviction. This holding is in accord with the decision of other jurisdictions which have passed on similar situations. See Anno: *Prosecution or Conviction of One Party to Alleged Conspiracy as Affected by Disposition of Case Against Other Parties,* 91 ALR2d 700, 722."

We deem *Berry* to be dispositive of this predication of error, and find against defendant thereon.

### III

Defendant next claims that the information filed in the instant case should have been quashed by the trial court or a verdict of acquittal should have been directed by the court below because there was not sufficient evidence *aliunde* the statements of a coconspirator (Heath) or defendant's extrajudicial admissions to establish a conspiracy. Absent such independent evidence establishing the existence of a conspiracy (the corpus delicti), the coconspirator's statements were not admissible under MRE 801(d)(2)(E), in effect at the time of trial; nor were defendant's admissions admissible.

In a related argument, defendant further contends that the quantum of proof necessary to independently establish the conspiracy is proof by a preponderance of the evidence, not merely the establishing of a prima facie case of conspiracy, the traditional standard. Defendant argues that the adoption of the Michigan Rules of Evidence, specifically MRE 104(a), mandates this conclusion.

We first address defendant's claim that his own admission should not have been allowed in evidence unless the corpus delicti of the offense is first established by evidence *aliunde* those admis-

sions. This contention fails for more than one reason.

First, the rule in Michigan is that the corpus delicti of first-degree premeditated murder (one of the charged offenses here) must be established by evidence *aliunde* a defendant's *confession. People v Johnson,* 93 Mich App 667, 672; 287 NW2d 311 (1979), and the cases cited therein. This rule does not extend to a defendant's *admissions. Id.,* 673. Moreover, even if defendant's statements were not admissible on this basis, they were clearly admissible under the rationale found in *People v Randall,* 42 Mich App 187; 201 NW2d 292 (1972), wherein this Court stated:

"There are several types of statements which while classified as admissions are nonetheless admissible to establish the corpus delicti. *A statement which itself is an element of the offense may be admitted. People v Lay,* 336 Mich 77 (1953). Excited utterances are admissible. A statement of a presently existing state of mind made shortly before the crime is committed is admissible to prove the crime. *People v Potter,* 5 Mich 1 (1858). In general, admissions made before the crime was committed are admissible to prove the corpus delicti. *Warszower v United States,* 312 US 342; 61 S Ct 603; 85 L Ed 876 (1941). *A statement made roughly contemporaneously with the crime even if shortly after may be admitted to prove the corpus delicti. People v Quimby,* 134 Mich 625 (1903).

"When a defendant's statement is not simply an admission, but also falls within another exception to the hearsay rule, which gives an additional indication of truth, the statement is admissible to prove the corpus delicti.

* * *

"The policy of the rule requiring proof of the corpus delicti by proof other than a confession is not offended by admitting statements which fall within two exceptions to the hearsay rule. This is sufficient indication of

the truth to overcome any reluctance to convict on the basis of a confession. A rule that was created for the salutary purpose of doing justice should not be construed in a manner that makes it merely an escape hatch for the guilty." (Emphasis added.) *Id.,* 190-192.

The admission of defendant placed in evidence, to which he now objects, was to the effect that defendant admitted hiring Lafler to kill his wife. It establishes an indispensable element of the crime of conspiracy, the fact of an agreement to do an unlawful act. See *People v Atley,* 392 Mich 298, 310-311; 220 NW2d 465 (1974). Thus, it falls squarely under the first exception enumerated in *Randall, supra,* and would be admissible on that basis. We therefore reject defendant's contentions regarding his own admission being offered in evidence.

Since this evidence was properly received, we find defendant's argument regarding the admission into evidence of his coconspirator's statements to be wanting in merit. The independent evidence presented, including the ample circumstantial evidence noted previously, was sufficient to make out a prima facie case of conspiracy so as to satisfy the necessary condition precedent to admissibility found in MRE 801(d)(2)(E). The order of presentation of the proofs was unimportant, as it is clear that a trial court may vary the order of proofs and admit the coconspirator's statements contingent upon later production of the independent evidence required under MRE 801(d)(2)(E). See MRE 104(b).

Our above use of the standard requiring the establishment of a prima facie case of conspiracy independent of a coconspirator's statements is by design, for this is the traditional requirement in Michigan, *People v Stewart,* 397 Mich 1, 6; 242 NW2d 760 (1976), *People v Scotts,* 80 Mich App 1;

263 NW2d 272 (1977), and we are not persuaded that the adoption of the Michigan Rules of Evidence elevated this standard to proof by a preponderance of the evidence. See *United States v Ochoa,* 564 F2d 1155, 1157 (CA 5, 1977), which interpreted similar Federal Rules of Evidence provisions, and concluded that prima facie evidence was the proper standard for independent proofs. We dismiss defendant's claim to the contrary.

IV

Defendant further urges us to conclude that the verdicts rendered by the jury in the case at bar were reversibly inconsistent. Defendant argues that there was no rational basis to explain the verdicts on the facts and circumstances of this case. We are unable to accept this proposition.

Murder is not an element of conspiracy to commit murder because conspiracy to commit a crime is a distinct offense apart from the crime which is the object of the conspiracy. The crime of conspiracy does not depend upon the success or failure of its object. *People v Chambers,* 279 Mich 73, 77; 271 NW 556 (1937). Contrarily, murder is an element of the crime of aiding and abetting murder. MCL 767.39; MSA 28.979. A rational explanation of the two verdicts is that the jury entertained a reasonable doubt as to some element of murder. See *People v Phillips,* 43 Mich App 581, 583-584; 204 NW2d 250 (1972), *People v Willie Johnson,* 58 Mich App 165, 167-168; 227 NW2d 272 (1975), *lv den* 394 Mich 755 (1975), *cert den* 423 US 849; 96 S Ct 91; 46 L Ed 2d 72 (1975). The case at bar is distinguishable from *People v McCurtis,* 84 Mich App 460; 269 NW2d 641 (1978), *lv den* 407 Mich 893 (1979), and *People v Vaughan,* 92 Mich App 742; 285 NW2d 444 (1979), where the jury in each

case necessarily found both the existence and no-nexistence of a common element of the two crimes charged.

## V

Defendant's next assignment of error concerns the trial court's ruling that the conspiracy involved in this case did not end with the death of Maria Losey, defendant's ex-wife. Defendant contends that the conspiracy terminated when the victim's death, the object of the conspiracy, was a *fait accompli.* Thus, according to defendant, those statements of coconspirator Ronald Heath, of and concerning the conspiracy and made after the decedent's demise, should not have been admitted. We disagree, for we do not believe the conspiracy terminated at that juncture. Instead, we adopt the rule stated in *United States v Perrone,* 161 F Supp 252 (SD NY, 1958), where the court held:

"A conspiracy does not end merely because the substantive crime which is its primary object has been completed. The final settling of the financial aspects of the transaction among the conspirators, and other acts necessary to complete the operation on which they were jointly engaged, and to consummate the arrangements between them, are equally part of the conspiracy with the attempt to commit or the commission of the substantive offense which was its prime object. *Rettich v United States,* 1 Cir, 84 F2d 118; *McDonald v United States,* 8 Cir, 89 F2d 128.

"There is nothing to the contrary in *Grunewald v United States,* 353 US 391, 77 S Ct 963, 1 L Ed 2d 931, and *Krulewitch v United States,* 336 US 440, 69 S Ct 716, 93 L Ed 790, on which defendants rely. In the case at bar the acts of the conspirators which took place subsequent to the completion of delivery on May 27 are not merely attempts to conceal a crime already committed, as was the case in *Grunewald* and *Krulewitch.*

They were affirmative steps in pursuance and further-
ance of the conspiracy charged. *Cf. Grunewald v United
States, supra,* 353 US at page 405, 77 S Ct at page 974."
*Id.,* 259.

*Cf., People v Scotts, supra,* 5-6.

We find this reasoning persuasive. The grava-
men of the conspiracy charge in the case *sub
judice* was defendant's agreement to pay Lafler to
kill Maria Losey. So long as defendant continued
to pay, the agreement remained in force.

## VI

Next, defendant asks this Court to find reversi-
ble error in the cross-examination of the defendant
by the prosecutor, which he contends included
impermissible inquiries into several collateral mat-
ters.

With respect to the prosecutor's questions re-
garding child support for the children from defen-
dant's first marriage, the burning of defendant's
son's hand, and as to a breaking and entering of
the victim's home, each question was met with an
objection, which objection was sustained and an
appropriate cautionary instruction given. We de-
cline to find reversible error on this record. *People
v Taylor,* 44 Mich App 640, 648; 205 NW2d 884
(1973), *lv den* 391 Mich 758 (1974).

Defendant further complains that reversible er-
ror occurred after he was cross-examined regard-
ing a telephone conversation his ex-wife was al-
leged to have engaged in, in defendant's presence,
a week before the homicide. Defendant denied
remembering the event, whereupon, according to
defendant impermissible rebuttal testimony of a
witness, Maria Seeley, was heard wherein she
testified to being the other party to that conversa-

tion as well as to events involving defendant described to her by the victim as occurring simultaneously with the phone conversation. Defendant claims that the rebuttal testimony was impermissible extrinsic impeachment on a collateral matter, since the prosecutor was bound by defendant's denials on the matter.

The prosecution argues contrariwise that the inquiries made of defendant regarding the telephone conversation between his ex-wife and the rebuttal witness were relevant to defendant's motive and that therefore the matter was not collateral and the rebuttal testimony was proper.

The specific questions asked defendant concerned whether he had attempted to remove the victim's pants while she conversed with Maria Seeley on the telephone on February 4, and whether the decedent was screaming at that time. To rebut defendant's denials that such had occurred, the prosecution called Maria Seeley, who testified that she spoke on the telephone with the victim on February 4. Seeley said the victim sounded upset and began to scream when her ex-husband attempted to remove her pants and told Seeley that defendant did not believe her explanation that she was "on her period" as her reason for resisting his overtures.

It is not seriously open to question that motive was an issue in the case, more narrowly defendant's hatred of his ex-wife on which evidence was previously adduced in the prosecution's case in chief. The cross-examination above referred to was relative to motive and provided the vital connective link to a material issue being tried which would suffice to render the now objected to rebuttal testimony admissible. *People v McGillen #1,* 392 Mich 251, 266-268; 220 NW2d 677 (1974),

*People v Bauman,* 332 Mich 198, 206-207; 50 NW2d 757 (1952). As such, we decline to reverse on this ground.

## VII

We fail to perceive any abuse of discretion on the part of the court below in admitting into evidence an on-the-scene color photograph of the victim. The photograph was relevant insofar as it corroborated Ronald Heath's secondhand account of the murder and his veracity generally. Heath testified as to how the murder took place, based on a conversation he had with James Lafler, the alleged "hit" man. The accuracy of Heath's account was material and his credibility obviously in issue, as with any witness. The photograph served to substantiate in large measure Heath's testimony regarding the murder. In addition, the photo depicted the corpus delicti. Neither was it so gruesome as to compel the conclusion that it was offered solely to arouse the passion or prejudice of the jury nor to render its prejudicial effect greater than its probative value. Such being the case, we refuse to reverse on this contention of error. *People v Eddington,* 387 Mich 551, 561-563; 198 NW2d 297 (1972).

## VIII

We cannot agree with defendant's claim that the prosecutor impermissibly vouched for the credibility of the people's witnesses and injected his office or personality into the decision-making process. The prosecutor properly related his arguments to the evidence and expressed an opinion based upon the proofs presented. *People v Yarborough,* 61 Mich App 303, 308; 232 NW2d 394 (1975). The

prosecutor's gratuitous comment regarding the rights of the victim was not so inflammatory that any possible prejudice resulting therefrom could not have been cured by a cautionary instruction. See *People v Walker,* 93 Mich App 189, 198-199; 285 NW2d 812 (1979). *Cf., People v Blassingame,* 59 Mich App 327, 336; 229 NW2d 438 (1975), *lv den* 399 Mich 842 (1977).

## IX

As a final issue, defendant argues that the trial court abused its discretion in refusing to grant a new trial, because the prosecutor did not reveal until after the jury had retired to deliberate the existence of a prior inconsistent statement of the key prosecution witness, Ronald Heath. It must be noted that defendant made no request for an examination of this statement.

The statement was made to the prosecutor by Heath following an interview with a state police sergeant. The substance of the statement was that Heath did not think James Lafler was actually going to kill anyone but that he was only going to "fleece" defendant for as much money as he could. The content of the statement was not relevant to show Lafler's state of mind; it only indicated Heath's opinion of Lafler's state of mind. However, Heath's state of mind was relevant since the jury had to base a verdict of guilty of conspiracy to commit murder on a finding that either Heath or Lafler possessed the twofold specific intent both to conspire (act in concert) and to commit the substantive wrong which is the object of the conspiracy in addition to defendant's being possessed of a like twofold intent, since the rule is that that intent must be possessed by more than one individual. *People v Atley, supra,* 310. So too, the state-

ment was germane to Heath's credibility, since he had testified to certain incidents inconsistent with such a state of mind.

Defendant argues in the alternative, claiming that reversible error was committed whether the withholding of the statement by the prosecutor was intentional or whether it was negligent.

We note only that good faith or bad faith on the part of the prosecutor is not a controlling consideration, at least where no request for exculpatory material is made or only a general request is put forward. *United States v Agurs,* 427 US 97, 107-109; 96 S Ct 2392; 49 L Ed 2d 342 (1976), *Brady v Maryland,* 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Such was the case here. Therefore, we conclude that the proper standard of review of defendant's claim is under the fair trial guarantee of the due process clause found in *United States v Agurs, supra,* wherein the majority opinion stated:

"On the one hand, the fact that such evidence was available to the prosecutor and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial. For that reason the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal. If the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the State's possession as when it was found in a neutral source, there would be no special significance to the prosecutor's obligation to serve the cause of justice.

"On the other hand, since we have rejected, the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel, we cannot consistently treat every nondisclosure as though it were error. It necessarily follows that the judge should not order a new trial every time he is unable to

characterize a nondisclosure as harmless under the customary harmless-error standard. Under that standard when error is present in the record, the reviewing judge must set aside the verdict and judgment unless his 'conviction is sure that the error did not influence the jury, or had but very slight effect.' *Kotteakos v United States,* 328 US 750, 764. Unless every nondisclosure is regarded as automatic error, the constitutional standard of materiality must impose a higher burden on the defendant.

"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

"This statement of the standard of materiality describes the test which courts appear to have applied in actual cases although the standard has been phrased in different language." (Footnotes omitted.) *Id.,* 111-113.

Evaluating the withheld statement in the context of the entire record, we are not convinced that it creates a reasonable doubt that did not heretofore exist. Put another way, there is no reasonable doubt about guilt whether or not the additional evidence is considered. Moreover, on cross-examination, Heath had denied that he ever agreed with defendant or Lafler to kill the victim. The content of the withheld statement was therefore merely cumulative of this testimony. We can see no justification for a new trial on this basis.

## X

In sum, we do not find any of the claimed errors sufficient to necessitate reversal, and therefore affirm defendant's conviction and sentence.

Affirmed.