PEOPLE v WILDER

1. CRIMINAL LAW—INMATES OF PENAL INSTITUTIONS—GOOD FAITH
   PROSECUTION—180-DAY RULE—STATUTES.

   A trial court has jurisdiction to conduct a trial of a criminal
   defendant who is an inmate of a penal institution of the state
   on an untried warrant, indictment, information or complaint
   even though the defendant was imprisoned for more than 180
   days before the trial, where the record reveals that the prosecu-
   tor took action in good faith on the case during the 180 days
   and, thereafter, proceeded promptly to ready the case for trial
   (MCLA 780.131 *et seq.*).

2. CRIMINAL LAW—PRESERVING QUESTION—EVIDENCE—MOTION TO
   SUPPRESS.

   A defendant did not properly preserve an issue of illegal search
   and seizure for appeal where he failed to make a pretrial
   motion to suppress the evidence which he claimed was the fruit
   of an illegal search and seizure and made no objection to the
   admission of the evidence at trial on such a basis.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEADLOCKED JURY—COER-
   CION.

   A judge's additional instruction to a jury, after they announced
   that they were unable to reach a verdict, was not erroneous
   where the charge fairly instructed the jurors that they were to
   reach their own verdict and contained no language which could
   be said to have coerced the jury into reaching a decision.

4. ROBBERY—ARMED ROBBERY—EVIDENCE—SUFFICIENCY—CIRCUM-
   STANTIAL EVIDENCE.

   There was sufficient circumstantial evidence to support a defend-
   ant's conviction on a charge of armed robbery without basing

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 241–256.

[2] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

[3] 53 Am Jur, Trial §§ 759, 804, 1006.
   Rule of reasonable doubt as applicable to reasonable doubt on part
   of individual juror, 137 ALR 394.

[4] 67 Am Jur 2d, Robbery §§ 49, 50.

an inference upon an inference where a robbery had been committed and the defendant's license plates were on a car which contained evidence of the robbery and which earlier had attempted to elude police, where a hat, identified as that worn by the robber, was found on a tree next to the car, where defendant was found running a short distance away from the area in which the car was abandoned without any pants on and his legs scratched and bleeding, where a pair of pants with the defendant's name inside were found a short distance from the track leading away from the car, and where, at the time of his arrest, the defendant had in his possession six bullets of the same caliber as the gun used to commit the robbery.

Appeal from Ingham, Marvin J. Salmon, J. Submitted Division 2 October 11, 1973, at Lansing. (Docket No. 16109.) Decided January 16, 1974.

James D. Wilder was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *Corbin R. Davis,* Assistant Prosecuting Attorney, for the people.

*Burwell & Shrank,* for defendant.

Before: T. M. Burns, P. J., and V. J. Brennan and Van Valkenburg,* JJ.

V. J. Brennan, J. Defendant, James Douglas Wilder, appeals as of right from his conviction by a jury in the Ingham County Circuit Court of armed robbery (MCLA 750.529; MSA 28.797). Four alleged errors are raised by defendant and urged as requiring reversal of his conviction.

In the early morning hours of March 18, 1972, a "Seven-Eleven" grocery store in East Lansing,

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6 § 23 as amended in 1968.

Michigan, was the site of an armed robbery. One clerk was on duty at the time and he was ordered by a man armed with a .25-caliber pistol to hand over the contents of a safe and cash register. The clerk, Paul Fisher, complied with these instructions, placing the contents of the safe in a bank deposit bag and the contents of the cash register in a brown paper bag. The robber then departed telling the clerk to stay in the back room of the store for five minutes or he would be shot. Mr. Fisher subsequently summoned the police and explained what occurred. He described the robber as a black male wearing a green windbreaker and a black stocking cap with a tassle on it. This armed man was not the defendant, however.

Officer Larry Dodson was on duty on the night in question and received a radio report of the robbery. He began to proceed to the store when he noticed an automobile heading toward him with two black men in it. He observed the two men turn around and watch him as he passed so he slowed down to get the vehicle's license number. As he did so, the automobile accelerated. He thereupon made a U-turn and a chase through the streets of East Lansing ensued. By this time the suspect vehicle had its lights turned off and Officer Dodson had his flasher going. Officer Dodson finally caught up with the vehicle at the end of a dead end street where it had been abandoned. As he got out of the patrol car, he noticed a black stocking cap hanging from the branch of a small tree. He secured this as possible evidence, made a slight search of the surrounding area and then waited for additional units to arrive. On the seat of the car was a bank deposit bag similar to that used by the store and a brown paper bag. On the floor of the car were numerous loose papers and

checks, including a "Seven-Eleven" payroll check, and a holster for a small caliber pistol. The license plates on the car were registered in the name of defendant.

Officer David Willard, also on duty on the night of the robbery, was taking the store clerk's report of the incident when he received a radio report that Officer Dodson was in pursuit of a vehicle. He left the store and proceeded to the general area where the car was abandoned. As he was driving up Lantern Hill Drive, he observed defendant running towards him from the area where the suspect vehicle was abandoned. Defendant had no pants on, his legs were cut and scratched and he appeared out of breath. Officer Willard held defendant until assistance arrived. Defendant was then arrested, advised of his rights, and searched. The search of defendant uncovered six .25-caliber bullets in one of his breast pockets. A police dog was brought in and followed a track from the car in a westerly direction. A pair of pants with the name "Wilder" written on the inside was found a short distance from this track.

On the above facts, the case went to the jury who had been properly instructed on the elements of the offense and the law of aiding and abetting. No defense was presented by defendant and his conviction resulted. He now appeals.

Defendant first alleges that the trial court was without jurisdiction to try him because the statutory 180-day rule (MCLA 780.131 *et seq.;* MSA 28.969[1] *et seq.)* had been violated. Defendant contends that this statutory period began to run on March 18, 1972, the day he was arrested and a "hold" placed on him for parole violation. He maintains that he was, at that time, returned to the Corrections Commission and that a period

exceeding 180 days elapsed subsequent thereto
without any good faith action taken by the prose-
cution to bring him to trial. The prosecutor, solely
for the purposes of this appeal, accepts defendant's
assertion that the 180-day rule began to run on
March 18, 1972, but contends that the court did
have jurisdiction because good faith action was
taken by the prosecution within the statutory
period.[1] It is clear, as both parties recognize, that
MCLA 780.131 *et seq.;* MSA 28.969(1) *et seq.* does
not require that the trial be concluded, or even
commenced, within the 180 days. All that is re-
quired is that good faith action be taken on the
case by the prosecution during the 180 days and
that the prosecution, thereafter, proceed promptly
in readying the case for trial. *People v Hender-
shot,* 357 Mich 300; 98 NW2d 568 (1959); *People v
Potts,* 46 Mich App 538; 208 NW2d 583 (1973);
*People v Asher,* 32 Mich App 380; 189 NW2d 148,
*leave denied,* 385 Mich 767 (1971). In the case at
bar, defendant's preliminary examination was held
on April 20, 1972. The trial date was originally set
for September 5, 1972, and a writ of habeas corpus
was obtained by the prosecution to secure defend-
ant's attendance thereat. The trial was subse-
quently adjourned to a later date due to the ab-
sence of the complaining witness and complica-
tions involving defendant's representation by coun-
sel. Trial was finally commenced on October 19,
1972. The above facts clearly illustrate that the
statutory requirements were satisfied in this case.
*People v Castelli,* 370 Mich 147; 121 NW2d 438
(1963); *People v Asher, supra; People v Linscott,* 14
Mich App 334; 165 NW2d 514 (1968), *leave denied,*

---

[1] We express no opinion as to the date on which the 180 day period
began to run except to note that statements in *People v Castelli,* 370
Mich 147; 121 NW2d 438 (1963), and *People v Williams,* 9 Mich App
676; 158 NW2d 42 (1968), *leave denied,* 381 Mich 800 (1969), appear to
indicate that defendant's assertion is erroneous.

381 Mich 807 (1969). The jurisdiction of the lower court, therefore, was not abrogated by MCLA 780.133; MSA 28.969(3).

Defendant's second contention is that the trial judge erroneously admitted into evidence six .25-caliber bullets found on defendant at the time of his arrest. Defendant maintains that these bullets were obtained through an illegal search and seizure and that their admission constitutes reversible error. Defendant made no pre-trial motion to suppress this evidence, as is required by well-settled law in this state, and did not, therefore, properly preserve the issue for appeal. *People v Ferguson,* 376 Mich 90; 135 NW2d 357 (1965); *People v Gray,* 45 Mich App 643; 207 NW2d 161 (1973); *People v Duerson,* 35 Mich App 223; 192 NW2d 309 (1971). Although defendant did object to the admission of this evidence during trial, we decline the invitation to consider the legality of the search on this appeal. Defendant obviously knew that this evidence was in the possession of the police and the manner in which it was obtained. His objection to its admission at trial was based on a lack of proper foundation. Under these circumstances we see no reason for us to decide the issue now.

Defendant next contends that the trial judge committed reversible error when he gave the jury an additional instruction after they announced that they were unable to reach a verdict. Defendant alleges that the charge was erroneous because it coerced the jury into reaching a decision and instructed the dissenting jurors to acquiesce in the decision of the majority. We disagree. The instruction given by the lower court closely approximates the charge approved by our Supreme Court in *People v Chivas,* 322 Mich 384; 34 NW2d 22 (1948). The differences between the instruction com-

plained of here and that approved in *Chivas* are not such as to compel us to hold that reversible error was committed. The charge fairly instructed the jurors that they were to reach their own verdict and contained no language which could be said to have coerced the jury into reaching a decision.

Defendant's final contention is that there was not sufficient evidence presented from which the jury could properly have inferred defendant's participation in the robbery. Defendant contends that the prosecution's case was built solely upon an inference based upon an inference and that this is not sufficient to support a conviction. *People v McGregor,* 45 Mich App 397; 206 NW2d 218 (1973), and *People v Eaves,* 4 Mich App 457; 145 NW2d 260 (1966), *leave denied,* 379 Mich 756 (1967), clearly support defendant's statement of the law in this regard but his reliance on this legal principle is misplaced. In the case at bar there was sufficient circumstantial evidence presented to support defendant's conviction without basing an inference upon an inference. A robbery had been committed and defendant's license plates were on a car which contained evidence of the robbery and which had earlier attempted to elude Officer Dodson. A hat, identified as that worn by the robber, was found on a tree next to the car. Defendant was found running a short distance away from the area in which the car was abandoned without any pants on and with his legs scratched and bleeding. A pair of pants with his name inside was found a short distance from the track leading away from the car. At the time of his arrest defendant had in his possession six bullets of the same caliber as the gun used to commit the robbery. From this circumstantial evidence the jury could properly have

found, as they did, that defendant was a participant in the crime.

Affirmed.

All concurred.