PEOPLE v CLEMENT ANDERSON

Docket No. 44497. Submitted October 16, 1980, at Detroit.—Decided December 15, 1981. Leave to appeal applied for.

Clement B. Anderson was convicted of first-degree criminal sexual conduct and assault with intent to commit unarmed robbery, Recorder's Court of Detroit, Henry Heading, J. Defendant appeals, alleging that the convictions of both offenses constitute double jeopardy, that the trial court erred by not instructing the jury that first-degree criminal sexual conduct requires a finding that the sexual penetration had as its purpose sexual gratification, and that the trial court erred by allowing testimony of a witness regarding a prior sexual assault which the defendant had committed upon that witness. *Held:*

1. The offense of assault with intent to commit unarmed robbery in this case was an essential element of the offense of first-degree criminal sexual conduct. Conviction of both, therefore, violated the defendant's guarantee against double jeopardy. The assault conviction is vacated.

2. Defendant argues that CJI 20:2:04 requires a finding that the sexual penetration has as its purpose sexual gratification in order to justify a conviction of first-degree criminal sexual conduct. CJI 20:2:04 does not correctly state the law with regard to *first-degree* criminal sexual conduct, which requires only a sexual penetration and the presence of one of several enumerated aggravating circumstances. In this case the aggra-

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 276.

[2] 75 Am Jur 2d, Trial § 610.
   Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.

[3] 65 Am Jur 2d, Rape § 3.
   What constitutes penetration in prosecution for rape or statutory rape. 76 ALR3d 163.

[4] 16 Am Jur 2d, Constitutional Law § 219.

[5] 29 Am Jur 2d, Evidence § 321.
   65 Am Jur 2d, Rape §§ 70-75.

[6] 29 Am Jur 2d, Evidence § 321.

[7] 29 Am Jur 2d, Evidence § 267.

vating circumstance was the assault with intent to commit unarmed robbery. Further, the criminal sexual conduct statute, as applied to the defendant, does not unconstitutionally prohibit innocent acts.

3. The testimony of the prior victim tended to establish a scheme, plan, or system in doing the act and the absence of mistake or accident. The testimony was material to the question of the defendant's guilt or innocence. Also, the issue of the defendant's intent, scheme, plan, or system had already been placed in dispute by the testimony of the other witnesses. The trial court did not abuse its discretion in allowing the testimony. .

The conviction of assault with intent to commit unarmed robbery is reversed; the conviction of first-degree criminal sexual conduct is affirmed.

1. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT.

Separate convictions of a defendant for both first-degree criminal sexual conduct and an underlying felony violate the defendant's guarantee against double jeopardy where the underlying felony is a required element for the first-degree criminal sexual conduct conviction.

2. CRIMINAL LAW — CRIMINAL JURY INSTRUCTIONS.

Use of the Criminal Jury Instructions is not required but is encouraged.

3. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — STATUTES — CRIMINAL JURY INSTRUCTIONS.

First-degree criminal sexual conduct requires only a sexual penetration as defined by statute and the presence of one of the enumerated aggravating circumstances; the Criminal Jury Instruction regarding a finding that the sexual act have as its purpose sexual gratification or stimulation does not correctly state the law with regard to first-degree criminal sexual conduct (MCL 750.520b[1]; MSA 28.788[2][1], CJI 20:2:04).

4. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — INNOCENT ACTS.

The first-degree criminal sexual conduct statute does not unconstitutionally prohibit innocent acts (MCL 750.520b; MSA 28.788[2]).

5. CRIMINAL LAW — EVIDENCE — BAD ACTS — RULES OF EVIDENCE.

Evidence of a criminal defendant's other bad acts is admissible

upon a showing of: (1) substantial evidence that the defendant committed the other acts; (2) special circumstances of the other acts tending to establish one of several items enumerated in the applicable court rule; and (3) materiality of the enumerated item to the charged offense (MRE 404[b]).

6. CRIMINAL LAW — EVIDENCE — BAD ACTS.

Generally, evidence of a criminal defendant's other bad acts may be introduced only when the matter which the evidence tends to prove is disputed and the trial court determines that the probative value of the evidence is not outweighed by its prejudicial effect.

7. CRIMINAL LAW — EVIDENCE — BAD ACTS.

A defendant may dispute matters and thus place them in issue by cross-examining prosecution witnesses, thereby satisfying a prerequisite for receiving evidence of prior bad acts.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Gary R. Dettloff,* Assistant Prosecuting Attorney, for the people.

*P. E. Bennett,* Assistant State Appellate Defender, for defendant on appeal.

Before: BRONSON, P.J., and D. E. HOLBROOK, JR., and R. M. RANSOM,* JJ.

R. M. RANSOM, J. Defendant was convicted by a jury of one count of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), and one count of assault with intent to commit unarmed robbery, MCL 750.88; MSA 28.283, for which he was sentenced to terms of life and 5 to 15 years imprisonment respectively.

FACTS

On May 28, 1978, at approximately 1:30 a.m.,

* Circuit judge, sitting on the Court of Appeals by assignment.

Janice Dowdell, the complainant, and her friend, Janice Watson, after getting off the Jefferson Avenue bus in the City of Detroit, walked up Woodward Avenue to catch another bus to Highland Park. Defendant and three other men were sitting on the curb at a bus stop. Dowdell and Watson kept walking to the next bus stop and the four men started walking with them. The six of them waited at the next stop and, when no buses came, they began walking up Woodward again.

After the six people had walked together for some time, the three other men caught a bus, and defendant kept walking and talking with Dowdell and Watson. At one point the three of them saw a man following them. Defendant said he had a lot of money on him and did not want to be robbed. The three left Woodward and walked toward John R. Defendant grabbed each girl by the hand, and they began running. At this point the testimony of the defendant diverges from that of Dowdell and Watson.

According to Dowdell and Watson, defendant pushed both girls down to the ground and fell on top of them. Defendant pulled off the pouch in which Watson had carried her money. Watson then got away from defendant and ran down an embankment after help.

Dowdell testified that after Watson ran away, defendant struggled with Dowdell. During the struggle, defendant stuck his hand in the front and then in the back of Dowdell's shorts, and said "Give me your money". While his hand was in the back of her shorts, defendant stuck his finger into her rectum, saying a second time, "Give me your money". Dowdell testified defendant tried to pull

her shorts down. During the struggle defendant bit Dowdell on the arm. As a result of the struggle, Dowdell was dirty, scratched, and her clothing was disheveled. While defendant and Dowdell were still struggling on the embankment, Watson returned with a cab driver and two policemen, and the policemen then arrested defendant.

Defendant claims that while running up the embankment the three of them fell either because Dowdell tripped defendant or helped to trip him. Defendant reached for his wallet thinking they were trying to rob him. Watson ran off in the direction from which they had come. Defendant put his arm around Dowdell's neck and one hand between her legs and sat her on her butt. Dowdell said she wanted to go home and started crying. Defendant told her not to worry and started brushing the dirt off her clothes. As the defendant and Dowdell were walking down the hill to look for Watson, the police arrived and arrested the defendant. Defendant denied knocking Dowdell and Watson down, denied sticking his finger in Dowdell's rectum, and denied asking Dowdell for money.

The court admitted into evidence the testimony of Anita Williams. Anita Williams, age 18, testified that on the evening of April 5, 1978, she was going home on a bus from which she alighted at about 9:30 or 10 and walked across the street. Defendant followed Williams across the street, walked past her, turned around, grabbed her by the neck, and started choking her. Defendant pushed her into an alley, asked her for her money and took her purse. He then threw her to the ground, bit her face, and started feeling in her panties. During subsequent

cross-examination defendant admitted that he assaulted Anita Williams on April 5, 1978.

Defendant raises three issues on appeal.

## DOUBLE JEOPARDY

Defendant contends that his convictions for criminal sexual conduct in the first degree and assault with intent to commit unarmed robbery violate the double jeopardy provisions of the federal and state constitutions.

In the case at bar, .assault with intent to commit unarmed robbery was an essential element of the first-degree criminal sexual conduct charge. The jury was instructed that in order to find defendant guilty of first-degree criminal sexual conduct it had to find defendant guilty of assault with intent to commit unarmed robbery.

We reaffirm the decision of *People v Swearington,* 84 Mich App 372; 269 NW2d 467 (1978), and hold that where the underlying felony is a required element for conviction of criminal sexual conduct in the first degree, separate convictions thereon violate guarantees against double jeopardy. Also see *People v Armstrong,* 100 Mich App 423; 298 NW2d 752 (1980), wherein this Court reiterated the principle of *People v Swearington, supra,* but distinguished the factual situation where the accompanying felony charged was not the underlying felony essential to conviction of criminal sexual conduct in the first degree.

Based on the double jeopardy violation in the case at bar, defendant's conviction for assault with intent to commit unarmed robbery is vacated.

SEXUAL INTENT

Defendant also asserts that his conviction for criminal sexual conduct must be reversed because the trial court did not instruct the jury that the offense required a finding that the penetration had as its purpose sexual gratification. Defendant's argument is based on the fact that CJI 20:2:04 and its Use Note provides:

"If you find that any act occurred, it must have been a sexual act. It must have had as its purpose the arousing, stimulating or gratifying of the sexual emotions (or it must have been done with some other sexually improper intent or purpose).

"USE NOTE: Where there is any question about the sexual nature of the act, this instruction *must be given.* It is appropriate for criminal sexual conduct in the first or third degree, *i.e.,* sexual penetration *ONLY;* sexual contact is limited to that which can 'reasonably be construed as being for the purpose of sexual arousal or gratification'." (Emphasis in original.)

Use of the Criminal Jury Instructions is not required, but is encouraged. See Supreme Court Administrative Orders 1977-1 and 1978-5, *People v Turner,* 86 Mich App 177, 182; 272 NW2d 346 (1978), *vacated on other grounds* 407 Mich 890 (1980).

This Court has held on several occasions, however, that CJI 20:2:04 inaccurately defines the statutory offense of *first-degree criminal sexual conduct* by requiring that the penetration have as its purpose sexual gratification or stimulation. *People v Hernandez,* 80 Mich App 465, 474; 264 NW2d 343 (1978), *lv den* 406 Mich 938 (1979), *People v Garrow,* 99 Mich App 834, 837-838; 298 NW2d 627 (1980), *People v Bailey,* 103 Mich App 619, 626-627; 302 NW2d 924 (1981). We reaffirm

the finding that CJI 20:2:04 does not correctly state the law with regard to *first-degree criminal sexual conduct.* MCL 750.520b(1); MSA 28.788(2)(1) requires only a sexual penetration as defined by MCL 750.520a(h); MSA 28.788(1)(h) and the presence of some additional aggravating circumstance (in this case a penetration under circumstances involving the commission of some other felony) for the defendant's acts to constitute first-degree criminal sexual conduct. See MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) and *People v Pettway,* 94 Mich App 812, 815; 290 NW2d 77 (1980).

Defendant contends, however, that if there need be no proof that the penetration was intended to obtain sexual gratification, absurdities would abound because minor felonies would be transformed into first-degree criminal sexual conduct without any change in the intent of the actor. Defendant's argument considers definition of the offense and reasonableness in sentencing totally by reference to *mens rea* to the exclusion of the specific acts committed by the defendant.

We believe there is no absurdity in changing the definition of the crime and increasing the potential maximum sentence where the actor's commission of some felony also involves acts subjecting the victim to personal degradation. An assault with intent to commit unarmed robbery is a serious offense in its own right, but where the assailant effects a sexual penetration by inserting his finger into the victim's anus, we believe this additional act can rationally be the basis for making the actor's conduct an offense carrying a more severe potential penalty than a mere assault. Sexual penetration could well create psychological problems for the victim over and above any mental difficulties which might possibly flow from an as-

sault. It is not unreasonable to treat more seriously an assault in which the victim is subjected to dehumanizing and degrading sexual acts than an assault in which no such degradation occurs. This is true quite apart from any intent to obtain sexual gratification on the part of the actor.[1]

Defendant further contends that if an intent to obtain sexual gratification is not implicit in the statute, it is unconstitutionally overbroad. We disagree. As applied to defendant, the statute prohibits sexual penetration of the victim as a circumstance of assault with intent to commit unarmed robbery. As such, the statute does not prohibit innocent acts. Compare, *Papachristou v City of Jacksonville,* 405 US 156; 92 S Ct 839; 31 L Ed 2d 110 (1972), *Detroit v Sanchez,* 18 Mich App 399; 171 NW2d 452 (1969).

## SIMILAR ACTS EVIDENCE

Defendant also contends that the testimony of Anita Williams was improperly admitted as similar acts evidence. Ms. Williams testified that on April 5, 1978, she was riding on a bus. After leaving the bus, she crossed the street. Defendant followed her, walked past her, turned around, grabbed her by the neck and started choking her. He then pushed Ms. Williams into an alley, asked her for her money, and took her purse. Thereafter, defendant threw her on the ground, bit her face,

---

[1] If defendant's position prevailed, similar arguments could be made where forced sexual intercourse occurred. Many psychiatrists believe that sexual stimulation, gratification, or arousal is not the real purpose behind most rapists' acts of forced intercourse. Thus, acceptance of defendant's argument would inevitably lead to cases in which defense psychiatric experts testified that the purpose of the forced intercourse was not sexual at all but, rather, to degrade women and to work out feelings of hostility against women. In a psychological sense, then, there is almost always a question as to the sexual nature of the act.

and started feeling in her panties. Defendant ulti- mately forced Ms. Williams to engage in sexual intercourse with him. Defendant admitted that he had assaulted Ms. Williams.

The admission of evidence which shows defen- dant's other bad acts is allowable upon a showing of: (1) substantial evidence that defendant commit- ted the other acts, (2) special circumstances of the acts tending to establish one of the enumerated items in MRE 404(b) which supersedes MCL 768.27; MSA 28.1050,[2] and (3) materiality of the enumerated item to the charged offense. *People v Nabers,* 103 Mich App 354, 363; 303 NW2d 205 (1981), *People v Berry,* 101 Mich App 399, 403-404; 300 NW2d 575 (1980), *People v Wilkins,* 82 Mich App 260, 267-268; 266 NW2d 781 (1978), *rev'd on other grounds* 408 Mich 69; 288 NW2d 583 (1980).

The general rule, with certain specific excep- tions, is that evidence of other bad acts may be introduced only when the matter which they tend to prove is disputed. *People v Duncan,* 402 Mich 1; 260 NW2d 58 (1977), *People v Wilkins, supra.*

"A defendant may dispute matters, and thus place them in issue, by raising them * * * by cross-examining prosecution witnesses * * *. Until an issue is thus disputed it is not a proper subject for proof by other bad acts." *People v Wilkins, supra,* 268-269.

Even if the evidence is otherwise admissible, the trial court must still determine if the probative value of the evidence is substantially outweighed by its prejudicial effect. *People v Oliphant,* 399 Mich 472, 489-490; 250 NW2d 443 (1976), *Nabers, supra.*

---

[2] *People v Major,* 407 Mich 394, 397, fn 3; 285 NW2d 660 (1979).

In the instant case, defendant contends that there were no special circumstances of the prior acts which tended to prove one of the applicable elements, that the evidence was not material to a determination of defendant's guilt or innocence on the charged offense, and that the prejudicial effect of the evidence outweighed any probative value it might have. We will examine these contentions *seriatim*.

We believe the similar acts evidence tended to establish a "scheme, plan, or system in doing an act" and "absence of mistake or accident". MRE 404(b). Defendant's version of the events in issue was that he believed the complainant and her friend were trying to rob him, that he had no intention of robbing the women and never demanded money from them, that he had not placed his finger in the victim's rectum and that grabbing Ms. Dowdell around the neck and between her legs so as to force her to the ground were innocent acts.

Although there were some differences between the prior act and the charged offense, the similarities are more striking. In each case, the defendant followed the female victim who had alighted from a bus after dark. In each case, the defendant threw the victim to the ground in a secluded area and demanded money. In each case the defendant placed his hand in the victim's panties. Finally, in each case as the victim struggled, she was bitten by defendant.

We also conclude that the aforesaid circumstances were material to the question of defendant's guilt or innocence. The evidence tended to establish both that defendant had a distinctive *modus operandi* in committing robberies with related sex offenses and that there was no accident

or mistake. Given the defense pursued in this case, the lack of accident or mistake was highly material.

In this regard, defendant further contends that the similar acts testimony was not material at the time it was received because intent, scheme, plan, or system had not been placed in dispute. We disagree. Review of the record reflects extensive cross-examination by defense counsel of prosecution witneses William Shipley, cab driver, Clayton Edwards, Samuel Ward, and Donita Stepp, Detroit police officers, Janice Watson and Janice Dowdell, all prior to the similar acts testimony as related by Anita Williams. Conduct of defendant which the prosecution contended established defendant's criminal intent and criminal misconduct was the subject of said cross-examination. Defense counsel raised, through his cross-examination of the aforesaid witnesses, issues as to the character of defendant's acts of grabbing the girls' hands, leading them to a secluded area, the cause of their fall, whether the victim's clothing was disheveled and, if so, the reason therefor, and intent in grabbing the purse. Excluding the testimony of Anita Williams and defendant, the theory of the defense was readily discernible from cross-examination of the prosecution witnesses and had provided a basis for defense counsel to argue that defendant's conduct was innocent, accidental or a combination thereof. Defendant's motive, intent and the absence of accident were in issue.

Finally, we note that the evidence's potential for prejudice and its probative worth were both quite high. We cannot say, however, that the potential for prejudice of the evidence outweighed its probative value. As such, the trial court did not abuse its discretion in allowing the evidence to be admitted.

## CONCLUSION

We reverse the conviction for assault with intent to commit unarmed robbery for violation of double jeopardy guarantees and affirm the conviction for criminal sexual conduct in the first degree.