## PEOPLE v BROWN

Docket No. 55779. Submitted February 17, 1982, at Detroit.—Decided
November 2, 1982.

Jessie M. Brown, Clayton Wideman, Jr., and Spence Corbin were
charged with felony murder. Corbin pled guilty to second-de-
gree murder and testified for the prosecution at the joint trial
of Brown and Wideman in Recorder's Court of Detroit, Michael
F. Sapala, J. Corbin testified that he at Brown's behest
searched the apartment of the deceased for money and then
assisted Wideman in stabbing the deceased, again at Brown's
behest and with a knife given to him by Brown. During trial,
Brown's counsel asked for a hearing regarding defendant's
arrest on the basis that the arrest was illegal and the admis-
sion into evidence of certain signed statements made by the
defendant should be suppressed. The trial court denied the
request for a hearing on the basis that pursuant to a Recorder's
Court Rule such matters should have been raised in a pretrial
motion. The jury was instructed with respect to Brown on the
theory of aiding and abetting. The jury returned a verdict of
guilty of second-degree murder as to Brown and a verdict of not
guilty as to Wideman. Brown appeals. *Held:*

1. By statute, the common-law rule requiring the conviction
of the principal as a prerequisite to a valid conviction of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 724.
[2] 21 Am Jur 2d, Criminal Law §§ 167, 168.
[3] 21 Am Jur 2d, Criminal Law § 176.
[4] [No reference]
[5] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[6] 5 Am Jur 2d, Arrest § 16.
[7] 29 Am Jur 2d, Evidence §§ 590, 596.
[8] 29 Am Jur 2d, Evidence § 582.
[9] 29 Am Jur 2d, Evidence § 611.
[10] 40 Am Jur 2d, Homicide § 498.

What constitutes termination of felony for purpose of felony-murder
rule. 58 ALR3d 851.

Application of felony-murder doctrine where the felony relied upon
is an includible offense with the homicide. 40 ALR3d 1341.

aider and abettor has been abrogated. The statute requires only proof of the guilt of the principal in order to support the conviction of the aider and abettor. That statutory rule is applicable even where, as here, the principal and the aider and abettor are jointly tried. The prosecution met the burden of proof with respect to showing the guilt of Wideman, accordingly, the conviction of Brown is valid despite the acquittal of Wideman. Furthermore, under the facts of this case, the jury could have found that Corbin was the principal and Brown aided and abetted Corbin.

2. Despite the decisions of the Court of Appeals that where there is no pretrial motion to suppress the trial court may in its discretion consider the issue of suppression but is not required to do so, the standard on appeal is not whether the trial court abused its discretion but rather whether constitutional error occurred. Since the last of Brown's four statements was taken after an "investigatory arrest" and the record fails to establish whether there was probable cause for her arrest, that last statement is arguably the fruit of an illegal arrest. While it might have been error to permit the prosecution to use Brown's fourth statement to impeach Brown's credibility, the error was clearly harmless since the other three statements were admissible and the fourth statement was consistent with Brown's trial testimony.

3. It was error to permit the testimony relative to Brown's out-of-court statement relative to her involvement in an unrelated crime, since such statement was not relevant to any permitted inquiry in the present trial. The admission of that testimony, however, was harmless error.

4. The decision of the Supreme Court with respect to the finding of malice in felony-murder cases is not applicable to the present case, that rule not being retroactively applied and the trial in this case being before the decisional date of the new rule.

Affirmed.

MacKenzie, P.J., concurred. She would decline to address the questions of the legality of the arrest and the proper standard on review where a trial court denies a hearing on a mid-trial motion to suppress, since the finding that error, if any, was harmless error renders determination of the substantive issues unnecessary to the Court's discussion.

OPINION OF THE COURT

1. CRIMINAL LAW — JURY INSTRUCTIONS — AIDING AND ABETTING.

A trial judge's instructions to the jury which include an aiding and abetting theory are entirely proper where there is evidence that more than one person was involved in the commission of a crime, and where there is evidence that a defendant's role in the commission thereof may have been something less than a direct participation in the original wrongdoing.

2. CRIMINAL LAW — PRINCIPALS — ACCESSORIES.

The effect of the statute providing that one who procures, counsels, aids, or abets in the commission of an offense may be charged and convicted as a principal is to permit the prosecution of one who aids and abets, without regard to the conviction or acquittal or one who, under the common law, would have been called the principal; however, while a conviction of the principal is not necessary to the conviction of an accessory, the guilt of the principal must be shown (MCL 767.39; MSA 28.979).

3. CRIMINAL LAW — PRINCIPALS — ACCESSORIES.

The acquittal of a principal does not require the reversal of a conviction of a jointly tried accessory where there was introduced legally sufficient evidence tending to show that the accessory aided and abetted another principal in the commission of the crime.

4. JURY — RULES OF LOGIC.

Juries are not held accountable to rules of logic.

5. APPEAL — PRESERVING QUESTION — CONSTITUTIONAL LAW.

The failure to raise timely a constitutional question before the trial court does not preclude appellate review.

6. ARREST — INVESTIGATORY ARREST — EVIDENCE — PROBABLE CAUSE.

An investigatory arrest is not per se an illegal arrest such that evidence obtained pursuant to the arrest must be suppressed; rather, the admissibility of such evidence turns on whether the arrest was made with probable cause.

7. CRIMINAL LAW — CONFESSIONS — HARMLESS ERROR.

It is harmless error to admit for impeachment purposes a pretrial statement of a criminal defendant where three other properly admitted pretrial statements were used to impeach the defendant's credibility and the contested statement, unlike the other three statements, was consistent with the defendant's trial testimony.

8. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS OF CONFESSIONS.

A trial court should *sua sponte* conduct a hearing on the legality of an arrest whenever a police officer testifies that the defendant was arrested for "investigation" of a crime; such a statement raises an "alerting circumstance" which should signal the lower court to undertake further investigation.

9. CRIMINAL LAW — EVIDENCE — HEARSAY — ADMISSIONS.

Any out-of-court statement by a criminal defendant relative to a crime unrelated to the charged crime may be considered as an admission within the meaning of the rules of evidence; however, such a statement or admission is inadmissible since it is irrelevant (MRE 401, 801[d][2][A]).

10. HOMICIDE — JURY INSTRUCTIONS — FELONY MURDER — MALICE — RETROACTIVITY.

A jury instruction that the malice necessary to convict on a felony-murder charge may be inferred solely from the intent to commit the underlying felony does not require reversal where the trial took place before the decisional date of the Supreme Court decision abrogating the common-law felony-murder rule regarding malice, that decision being applicable only to those trials in progress or occurring after the date of that decision.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *William L. Cahalan*, Prosecuting Attorney, *Edward Reilly Wilson*, Principal Attorney, Appeals, and *Carolyn Schmidt*, Assistant Prosecuting Attorney, for the people.

*Stone, Richardson & Allen, P.C.* (by *Ralph H. Richardson*), for defendant on appeal.

Before: MACKENZIE, P.J., and BRONSON and T. R. THOMAS,* JJ.

BRONSON, J. Defendant and two others, Clayton Wideman, Jr., and Spence Corbin, were charged in the Detroit Recorder's Court with first-degree felony murder. MCL 750.316; MSA 28.549. Corbin ultimately pled guilty to second-degree murder

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and was sentenced to serve a term of imprisonment of from 5 to 15 years.[1]

Defendant and Wideman were jointly tried before a Detroit Recorder's Court jury. Wideman was acquitted, while defendant was convicted of second-degree murder. Defendant was sentenced to life imprisonment, and now appeals as of right.

Spence Corbin's testimony was the sole testimony directly implicating either defendant or Wideman in the killing. Corbin indicated that he was defendant's lover on the date of the killing. On March 4, 1980, he awoke in defendant's flat and heard noises "like somebody tussling". He looked around the flat but failed to locate the source of the noise. After finding nothing, Corbin went downstairs to the lower flat occupied by the deceased, Kenneth Bowers. In this flat, Corbin saw defendant holding some money in her hand which she was counting. Wideman was hitting Bowers on the back of the head and back with his fists. Defendant told Corbin to "help my brother [Wideman]". Corbin consequently picked up an ashtray and hit Bowers in the head with it. Wideman snatched the ashtray away from Corbin and rapped Bowers several times with it. Wideman then dragged Bowers toward the bedroom. Defendant told Corbin to search the flat for money; he complied. After a time, defendant called for Corbin to come to her, and, when he did, she handed him a paring knife and told him to go help her brother. Corbin took the knife. When he entered the bedroom, he stepped in a "puddle of blood" and observed Wideman stabbing Bowers. Feeling nauseous, Corbin turned his head, lunged the knife downward, and stabbed Bowers in the neck. There-

---

[1] Corbin stated at trial that he pled guilty and agreed to testify against defendant and Wideman in exchange for a promise that the sentence imposed against him would be "light".

after, he left the room to avoid vomiting while Wideman continued to stab Bowers. When the killing was completed, the knives, Corbin's bloodstained socks and other items of physical evidence were placed in a garbage can far from the scene of the crime. Other facts will be set forth where applicable to specific issues.

I

Defendant first asserts that the evidence was insufficient to warrant submitting to the jury the first-degree murder charge on an aiding and abetting theory. Alternatively, defendant asserts that her conviction cannot stand because the principal, Wideman, was acquitted of the murder charge.

A jury instruction on aiding and abetting is proper if the evidence tends to establish that more than one person committed the crime, and defendant's role in the incident amounts to something less than the direct commission of the offense. *People v Mann,* 395 Mich 472, 477-478; 236 NW2d 509 (1975); *People v Benevides,* 71 Mich App 168, 172; 247 NW2d 341 (1976). To justify giving aiding and abetting instructions there must be evidence of concert of action. *People v Marshall,* 53 Mich App 181, 186; 218 NW2d 847 (1974), and cases cited therein.

In our opinion, the aiding and abetting instructions given here were entirely proper. Corbin testified that while Wideman was hitting the deceased, defendant told him to help. Corbin also searched the deceased's flat for money at defendant's behest. Furthermore, defendant handed Corbin a paring knife and told him to help Wideman. At the time, Wideman was engaged in the stabbing of

Bowers. Absolutely no testimony was offered suggesting that defendant was a direct participant in the killing.

Defendant, however, further asserts, that, since Wideman, who according to Corbin's testimony was the primary actor in the killing, was acquitted, her conviction cannot stand. We disagree.

This question was first addressed in this jurisdiction in *People v Mangiapane,* 219 Mich 62; 188 NW 401 (1922). Discussing MCL 767.39; MSA 28.979, which abolishes the common-law distinction between accessories and principals, the Court concluded that this statute abrogated the common-law rule requiring the conviction of the principal as a prerequisite to a valid conviction of the aider and abettor. See, also, *F W Standefer v United States,* 447 US 10; 100 S Ct 1999; 64 L Ed 2d 689 (1980); *People v Smith,* 271 Mich 553, 561; 260 NW 911 (1935); *People v Miniear,* 8 Mich App 591, 596-597; 155 NW2d 222 (1967), *lv den* 380 Mich 758 (1968).

Both *Standefer* and *Mangiapane* involved separate trials where the alleged principal was found not guilty but the aiding and abetting defendant was convicted in a different trial. Here, however, defendant points out that the alleged principal, Wideman, was acquitted in the very same trial by the very same jury which convicted her as an aider and abettor. We uncovered no cases from this state involving the same factual scenario. Relying on the rule that, although conviction of the principal is no longer necessary to convict the accessory, the guilt of a principal must still be shown, *People v DeBolt,* 269 Mich 39, 45; 256 NW 615 (1934); *People v Williams #1,* 45 Mich App

623, 628-629; 207 NW2d 176 (1973), defendant asserts that the acquittal of Wideman compels the reversal of her conviction. We disagree because, quite apart from the sufficiency of the evidence tending to show that Wideman was a principal, Corbin's testimony clearly establishes his direct participation in the killing. Without regard to Wideman, then, a guilty principal was shown, to-wit: Corbin.

Even were we to conclude that only Wideman could be deemed a principal in the killing, reversal would not be necessary. The prosecution did, indeed, introduce legally sufficient evidence tending to show that Wideman was a principal and that defendant aided and abetted his commission of a felony murder. In our opinion, the rule prohibiting the conviction of one as an accessory where no guilty principal has been shown only applies to those cases in which legally insufficient evidence is adduced to permit the conclusion that there was a guilty principal. It is now beyond peradventure that juries are not held accountable to rules of logic. *People v Vaughn,* 409 Mich 463, 466; 295 NW2d 354 (1980). As such, a jury's decision to acquit the apparent principal while convicting the accessory is not grounds for reversal of the accomplice's conviction.[2]

---

[2] We note that in this case it is entirely possible that the jury was not really inconsistent at all but, rather, simply took to heart the presumption of innocence. The jury might have concluded that Corbin was not sufficiently credible, in and of himself, to convict the defendants. Defendant took the stand on her own behalf and was subject to a particularly damaging cross-examination. It is entirely possible that the jury deemed her testimony to be wholly incredible and that it was this testimony which allowed the jurors to find guilt beyond a reasonable doubt. Wideman, on the other hand, chose not to testify. He was thus not subject to attacks on his credibility. Moreover, during Corbin's testimony, Corbin indicated that only he and defendant knew where the garbage bag with the instrumentalities of the crime and other items of physical evidence had been disposed of. Counsel for

## II

Defendant next asserts that the trial court improperly refused to conduct a hearing on her motion to suppress various statements. Midway through trial, Detroit Police Officer Daniel Gossard stated that he arrested defendant for "homicide investigation". At this point, defense counsel asked for a hearing in regard to the arrest and the suppression of various statements made by defendant. The trial court responded:

.“If your position is, and as we all know, arrest for homicide investigation is unlawful and the fruits thereof are to be suppressed, that's a matter for pretrial. I'm willing to deal with *Miranda* [384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)] and whether or not *Miranda*'s been complied with, but if the claim is that the fruits, be it evidence or statements or confessions or admissions, were the result of unlawful arrest, that's a matter for pretrial. And I'm not going to open up that Pandora's box at this time.”

The trial court's reference to the motion to suppress being a pretrial matter was apparently based on Detroit Recorder's Court Rule 18.1 governing felony motion practice. This rule provides:

“Pre-Trial Motions. All Motions must be filed with the Clerk of the Court; with praecipe for hearing upon four (4) days notice to all counsel of record; and proof of service of notice upon opposing counsel must be presented to the Pre-Trial Judge within thirty (30) days after the Arraignment on the Information or within such extended time as shall be fixed by the Pre-Trial Judge.

Wideman strongly emphasized this testimony in his closing argument, stating, in part: “Well it would seem to me that if these three people participated in this killing as alleged by the prosecution, why was it [the bag] this very important knowledge incriminating evidence would have been kept from Clayton Wideman, Junior.”

"Any defense or objection, which is capable of determination without trial of the general issue, may be raised before trial by motion. Defenses and objections based on defects in the institution of the prosecution or in the Information, other than that it fails to show jurisdiction in the Court or to charge an offense, may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the Court for good cause shown may grant relief from the waiver."

A number of decisions from this Court have held that, where a proper pretrial motion to suppress evidence has not been made, the trial court has discretion to consider the issue but need not do so. *Inter alia: People v Paffhousen,* 20 Mich App 346, 351-352; 174 NW2d 69 (1969), *lv den* 383 Mich 825 (1970); *People v Wilder,* 51 Mich App 280, 285; 214 NW2d 749 (1974), *lv den* 394 Mich 774 (1975); *People v Soltis,* 104 Mich App 53, 55-56; 304 NW2d 811 (1981), *aff'd as modified on other grounds* 411 Mich 1037; 309 NW2d 186 (1981). Indeed, in *People v Greer,* 91 Mich App 18, 24-25; 282 NW2d 819 (1979), one panel of this Court, citing Recorder's Court Rule 18, went so far as to hold that the trial court had abused its discretion in considering mid-trial a question concerning the legality of defendant's arrest. The Court concluded that, since defense counsel had offered no reason for the belated motion, "good cause" had not been shown.

In point of fact, the above line of authority is in seeming conflict with the doctrine that, when defendant raises a constitutional question for the first time on appeal, this Court will nonetheless consider the issue. *Inter alia: People v Cotton,* 38 Mich App 763, 767; 197 NW2d 90 (1972); *People v Thomas,* 44 Mich App 649, 653; 205 NW2d 604

(1973); *People v Hoerl,* 88 Mich App 693, 696; 278 NW2d 721 (1979). This doctrine is sometimes phrased as making appellate review appropriate if resolution of the constitutional issue is decisive to the outcome of the case. *Inter alia: People v Blassingame,* 59 Mich App 327, 333; 229 NW2d 438 (1975), *lv den* 399 Mich 842 (1977); *People v Summers,* 70 Mich App 584, 586-587; 246 NW2d 152 (1976); *People v Harris,* 95 Mich App 507, 509-510; 291 NW2d 97 (1980). The distinction in how the test is phrased is more a matter of semantics than of any actual substantive difference in application. It is only possible to determine if the constitutional claim is outcome-determinative once its merits have been considered.

In our opinion, the failure to object to constitutional errors below does not preclude appellate review. We also reject the notion that, if a trial court in the exercise of its discretion refuses to consider the constitutional claim, we are limited in our review to a consideration of whether there has been an abuse of discretion.

Acceptance of the doctrine that the lack of a motion justifies the lower court in refusing to hear the claim, along with the rule that we will not reverse a trial court on a discretionary ruling absent an abuse of discretion *and* the doctrine that constitutional challenges will be considered on appeal even absent an objection below, would lead to anomalous results. Ironically, where both of these doctrines are deemed operative, a defendant who never raises the constitutional claim below is better off than a defendant who simply raises the issue during trial, instead of by pretrial motion. The defendant who never raised the issue could invoke the doctrine that failure to object does not preclude review of a constitutional claim. How-

ever, the defendant who objects or raises the issue
at the wrong time would, in most cases, have to be
content with the knowledge that the lower court
did not abuse its discretion in failing to consider
the belated motion.[3] Given the foregoing, while
accepting that a trial court need not consider an
untimely raised constitutional challenge, we fur-
ther conclude that the trial court's decision not to
address the claim does not preclude us from doing
so.[4]

We now turn to a discussion of the illegal arrest
claim, beginning with a recitation of the factual
posture of this issue. Defendant made four state-
ments to the police. However, only the fourth and
final statement was made after her arrest. All four
statements were exculpatory. The first three state-
ments were generally consistent except that each

[3] The doctrine that the trial court may exercise its discretion to
refuse or agree to consider an alleged constitutional error if a proper
pretrial motion to suppress has not been made goes back to *People v
Ferguson*, 376 Mich 90; 135 NW2d 357 (1965). We acknowledge that
this doctrine has never been overruled. Nonetheless, we note that
*Ferguson* was decided before the constitutional rights of criminal
defendants were deemed particularly important. We also note that
*Ferguson* states that the burden of establishing the illegality of a
warrantless search and seizure is on the defense. In fact, it is now
settled that where a warrantless search and seizure has occurred, the
burden is on the prosecution to establish legality because warrantless
searches are per se unreasonable. *Coolidge v New Hampshire*, 403 US
443, 455; 91 S Ct 2022; 29 L Ed 2d 564 (1971); *People v Reed*, 393
Mich 342, 362; 224 NW2d 867 (1975), cert den 422 US 1044; 95 S Ct
2660; 45 L Ed 2d 696 (1975); *People v Harold Williams*, 63 Mich App
398, 401; 234 NW2d 541 (1975).

[4] At the same time, we urge the lower courts to consider constitu-
tional challenges to evidence even if they are not, strictly speaking,
properly raised. The overwhelming majority of criminal defense coun-
sel are court appointed. It seems to us that where defense counsel fail
to make appropriate pretrial motions the lower courts should just
stop appointing these attorneys to represent indigent defendants.
Attorneys are appointed for defendants to insure that said defendants
will obtain fair trials in accordance with due process. Where an
appointed attorney's negligence jeopardizes a defendant's constitu-
tional rights, it makes more sense to penalize the attorney, if anyone,
than the defendant by refusing to consider potentially meritorious
constitutional challenges to the introduction of evidence.

of these statements added details not in the preceding statement. In the second statement, defendant cast aspersions on a group of brothers known as the Nolands. The third statement was an elaboration of the second and more directly implicated the Nolands. The fourth statement, given after defendant's arrest, constituted a drastic shift in the substance of her claims. In this statement, defendant indicated that Spencer Corbin had committed the murder and that she had helped dispose of some evidence after the killing but that she was not otherwise involved in the incident.

Although defendant's appellate counsel does not distinguish the admissibility of the various statements, only the last statement was made after her arrest for "investigation of homicide". Thus, only its admissibility is in issue.

This Court has previously held that where a defendant is arrested for investigation of a crime the arrest is illegal and that any evidence obtained as the fruit of that arrest must be suppressed regardless of the presence or absence of probable cause. *People v Martin,* 94 Mich App 649, 653; 290 NW2d 48 (1980), *lv den* 409 Mich 928 (1980); *People v Nabers,* 103 Mich App 354, 373; 303 NW2d 205 (1981). However, in *People v Nabers,* 411 Mich 1046; 309 NW2d 187 (1981), the Michigan Supreme Court reversed in part this Court's decision in *Nabers,* holding that there had been probable cause to arrest that defendant so that the items seized need not be suppressed. Since the Supreme Court failed to consider the investigatory arrest aspect of *Nabers,* we must assume that the Court decided that an investigatory arrest is not per se grounds for the suppression of evidence obtained incident thereto.[5]

---

[5] See, also, Baughman, *Criminal Procedure,* 27 Wayne L Rev 695,

It is unclear on the present record whether there existed probable cause to arrest defendant at the time the apprehension occurred. Certainly, the transcript of the trial fails to show that probable cause to effect an arrest existed, and, given the arrest for "investigation of homicide", this seems doubtful. However, an investigator's report appearing in the lower court file refers to a Glenn Davis who apparently told the police that defendant had admitted that she and others had robbed and stabbed the deceased. In her third statement to the police, defendant implicated, along with the Nolands, "a man named Glenn" who lived across the street. If Davis's statement was obtained prior to defendant's arrest, there was probable cause to effect the same. However, if the statement was made only after her arrest, defendant was apprehended on mere suspicion.

Nonetheless, it is our opinion that, even if defendant were illegally arrested on less than probable cause, on the facts of this case the error was harmless beyond a reasonable doubt. *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). See, also, *People v Pace,* 102 Mich App 522, 531, fn 2; 302 NW2d 216 (1980). The fact is that defendant denied any direct involvement in the killing in all of her statements. Her testimony at trial was consistent with her final statement. Basically, the prosecutor used the three earlier statements to impeach defendant's credibility concerning her version of the events in issue. The prosecutor really did not need to introduce into evi-

703 (1981), referring to the *Martin* decision as "ludicrous" for its failure to use an objective standard concerning whether probable cause exists to effect an arrest. In retrospect, having sat on both *Martin* and *Nabers,* I believe that I may have been overzealous in my efforts to protect the civil liberties of the populace by focusing solely on the nomenclature used by the arresting officer. At the same time, however, I believe that the characterization of the *Martin* and *Nabers* holdings as "ludicrous" represents overzealousness of a different type.

dence the fourth statement at all since defendant's
testimony at trial was in accordance with this final
statement and was inconsistent with her first
three statements. It was the earlier statements,
that were undoubtedly legally obtained, which
were used heavily to attack defendant's veracity,
not the final statement. Moreover, apart from the
inconsistencies between the earlier statements and
her testimony at trial, defendant's testimony was
riddled with other discrepancies and a selective
lack of memory problem.[6] Without regard to the

[6] What follows is just one of numerous examples of defendant's
troublesome and self-damaging testimony. On cross-examination:

"*Q.* Now prior to your testifying, you had an opportunity, did you
not, to look over the statements that you'd made?

"*A.* No.

"*Q.* Your attorney never showed you the statements that you made?

"*A.* No, he didn't.

"*Q.* Well, you did talk to him about the statements, didn't you?

"*A.* No.

"*Q.* Would—you were here yesterday when he made his opening
statement to the jury weren't you?

"*A.* Yes.

"*Q.* And he told the jury that the first three statements were false
and the fourth one was the truth, right?

"*A.* Right.

"*Q.* How would he know that if he didn't talk to you?

"*A.* I don't know.

"*Q.* Yesterday on direct examination he asked you some questions
and he said the first three statements they were the truth, weren't
they and you said yes, right?

"*A.* No.

"*Q.* He told you the first three statements were not the truth, right
and you said yes, they were not the truth, right?

"*A.* I didn't say anything.

"*Q.* And he asked you about the fourth statement yesterday and he
said that was the truth and you said yes, right?

"*A.* I didn't say anything to you.

"*Q.* Would you like sometime to go over those statements and read
them over to yourself?

"*A.* No.

"*Q.* Let me show you People's Proposed Exhibit No. 7 or People's
Exhibit No. 7.

"This is the first statement that you gave to the police, is it not?

"*A.* I guess, yes.

final statement made by her, defendant's own testimony sealed her fate and secured the prosecution's case.

Despite the foregoing, trial courts would be well advised to *sua sponte* conduct a hearing on the legality of the arrest whenever a police officer testifies that defendant was arrested for "investigation" of a crime. Such a statement raises an "alerting circumstance" which should signal the lower court to undertake further investigation. Compare, *People v Hooks,* 112 Mich App 477; 316 NW2d 245 (1982), which provides that in some circumstances the trial court should *sua sponte*

"*Q.* Well, read it over to yourself and let us know if that's the first statement you gave to the police, ma'am.

"*A*. Why should I read these over?

"*Q*. Because I'm—I want to—you to be able to identify that statement and tell us if that's the first one that you made or the second or the third or the fourth.

* * *

"*Q. [By the Prosecutor, continuing]*: Do you recognize that statement as the first statement that you gave to the police?

"*A.* No, I really can't recognize what statement it is.

"*Q.* All right. Why don't you read that statement over to yourself because I notice that you didn't read the back of that statement, see what's written in that statement and see if that refreshes your memory as to which statement that was.

(After a short delay, the proceedings continued.)

"Do you have—did you have an opportunity to read over that statement?

"*A.* Yes.

"*Q.* Now do you recognize that statement as the first statement that you gave to the police?

"*A.* No.

* * *

"*Q. [By the Prosecutor, continuing]*: What did you tell the police the first time you talked to them upstairs?

"*A.* I really don't remember."

During direct examination the day before, defendant's recollection of the substance of her previous statements was considerably better. Indeed, defendant's memory of the earlier statements was even much better during the first part of the prosecutor's cross-examination conducted on the same day as the direct examination. The complete breakdown of defendant's memory during the second day of cross-examination must have made a lasting impression on the jury.

hold a hearing inquiring into the voluntariness of defendant's statements.

## III

Defendant further asserts that the prosecution was allowed to introduce into evidence a highly prejudicial and irrelevant hearsay statement allegedly made by her to Spence Corbin. Corbin testified that he expressed to defendant fears that he had about being apprehended by the police. Defendant, in an attempt to allay these fears, supposedly said something like: "Don't worry about it. I have killed a man before and only received 90 days for it." Corbin went on to explain that the alleged victim was a former boyfriend of defendant's.

Defense counsel objected to the admission of the statement, but the trial court ruled that the statement was an admission pursuant to MRE 801(d)(2)(A).[7] We conclude that the statement should have been excluded.

On appeal, the prosecution relies upon *People v Moncure,* 94 Mich App 252; 288 NW2d 675 (1979), *vacated and remanded on other grounds* 409 Mich 905; 295 NW2d 494 (1980), which it contends stands for the proposition that a statement may be admitted pursuant to MRE 801(d)(2)(A), although it has no direct bearing on the crime charged. In

---

[7] The trial court also suggested that the statement was admissible pursuant to MRE 404(b) as evidence of a scheme or plan. The prosecution makes no attempt to justify admission of the statement on this basis. In our opinion, the trial court was clearly in error in attempting to justify admissibility on MRE 404(b) since this case did not involve a scheme or conspiracy on defendant's part to kill people. Scheme or plan was simply not material in this case. See *People v Clement Anderson,* 111 Mich App 671, 679-682; 314 NW2d 723 (1981), and cases cited therein.

*Moncure,* a witness testified that defendant had earlier told her, "if the deceased ever left him he would kill her and then kill himself". 94 Mich App 257. The *Moncure* Court, relying on 4 Wigmore, Evidence (3d ed), § 1048, pp 4-5, concluded that an admission is any out-of-court statement made by a defendant and embraces more than the literal definition of "admission", namely, that defendant actually admit to having taken a particular action. 94 Mich App 259. Thus, in *Moncure,* defendant's statement concerning what he would do in the future was admissible into evidence.

We specifically disagree with the prosecution's characterization of defendant's statement in *Moncure* as having no direct bearing on the crime charged. There, defendant was on trial for the first-degree murder of his lover, the deceased. As such, his statement that he would kill her under certain circumstances was relevant to establish premeditation and deliberation.

We do not disagree with the prosecution's position that any out-of-court statement made by a defendant which is offered against that defendant is an admission. However, this fact only disposes of the hearsay objection to the use of the statement; it does not dispose of the relevancy objection. MRE 401. In our opinion, the statement or admission made by defendant in this case was irrelevant. The statement constituted an admission of past wrong-doing, but it did not make it more probable that defendant also murdered the deceased in this case. To the extent that the statement may be deemed

relevant, it is relevant only on the prohibited basis that if defendant did it once, she likely did it again. MRE 404(b). Thus, this case is unlike *Moncure* in which the admission was relevant.[8]

In light of the above, we must determine whether the error was harmless. Although the verdicts rendered in this case were sufficiently odd to raise the specter of harm caused by the erroneous admission, we ultimately conclude that no reversal is warranted on this basis. The trial court gave explicit cautionary instructions concerning the permissible use of the "admission" and how it should be weighed. The court also gave instructions to the jury concerning Corbin's testimony as an accomplice informant, urging the jury to examine his testimony with greater care and concern for veracity than would be justified for an ordinary witness's testimony. These instructions would seem to substantially reduce the weight likely given to Corbin's testimony about the admission. Moreover, as noted earlier in this opinion, there exists a sound basis, consistent with the belief that the jury took its deliberations and the court's charge with great earnestness, explaining the acquittal of Wideman and the conviction of defendant. In light of defendant's own obviously self-destructive testimony, we do not believe that but for the error one juror would have voted to acquit. Finally, we do not believe the prosecutor intentionally injected the error into the proceedings. See, *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972); *People v Swan,* 56 Mich App 22, 31-32; 223 NW2d 346 (1974), *lv den* 395 Mich 810 (1975).

---

[8] Even had the "admission" been relevant, the trial court would have been obligated to consider whether its probative value was outweighed by the danger of unfair prejudice to defendant. MRE 403.

IV

Defendant's final claim on appeal is that in light of *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980), her conviction must be reversed because the trial court incorrectly charged on the malice element of first-degree felony murder. Without regard to the substantive merits of this claim, we note that *Aaron* is not to be applied retroactively, and the trial in this case was decided before the decisional date of *Aaron.* See, *People v Bradley,* 106 Mich App 373, 381; 308 NW2d 216 (1981); *People v Lonchar,* 411 Mich 923; 308 NW2d 103 (1981); *People v Dietrich,* 412 Mich 904; 315 NW2d 123 (1982). As such, defendant's claim presents no basis for reversal.

Affirmed.

T. R. THOMAS, J., concurred.

MACKENZIE, P.J. *(concurring).* I join in Parts I, III, and IV of the majority opinion. I concur in the result reached in Part II. I agree that the admission of defendant's statements under the circumstances presented here was harmless beyond a reasonable doubt. The other matters discussed by the majority in Part II are unnecessary to our decision and I decline to express an opinion on them at this time.